# FRED S. HUDSON et al., Respondents, v. D. A. FRENCH, et al., Appellants.

### In the Kansas City Court of Appeals, May 1, 1922.

1. **APPEAL AND ERROR:** On Appeal in an Equity Case the Court Will Examine Whole Record and Determine Case De Novo. In an equity case the court will examine the whole record and determine the case *de novo*.

2. **PARTNERSHIP: Words and Phrases: Partnership Defined.** A "partnership" is an association for the purpose of prosecuting any lawful business formed by contract between two or more persons who have contracted to place their money, effects, labor, and skill, or some of them, in lawful commerce or business, with the understanding that there shall be a communion of profits between them.

3. ———: **Contracts: Partnership Relation May be Implied from Conduct of Parties.** A partnership relation is founded upon voluntary contract, which need not be an express agreement, and in the absence of an express agreement, the conduct of the parties will be regarded as determinative of the existence thereof.

4. ———: **Tenants in Common: Stockholders Exchanging Stocks for Land Held to Own and Operate the Same as Tenants in Common and not as Partners.** Where three persons owning the capital stock of a corporation traded their stock for a farm and then proceeded to lease the same for a number of years by leases signed by each individually, and where they afterwards sold the land by contract entered into by the three individually, and conveyed the same as individuals, *held*, the land was owned by the three as tenants in common, and not as partners.

5. ———: **True Method of Determining Whether Land Standing in Names of Individuals is to be Treated as Partnership Property Stated.** The true method of determining as between partners themselves, whether or not land standing in the names of individuals is to be treated as partnership property *is to ascertain from the conduct of the parties, and their course of dealing, the understanding and intention of the partners themselves which,* when ascertained, unquestionably should control.

Appeal from the Circuit Court of Clay County.—*Hon. Ralph Hughes,* Judge.

AFFIRMED.

*J. D. Allen* and *Thos. Hackney* for respondent.

*Schmitz & Marshall* and *Paul D. Kitt* for appellant.

ARNOLD, J.—This is a suit in equity to determine the right to certain funds on deposit with the People's Trust Company of Chillicothe, Livingston County, Missouri. The fund in litigation is a part of the proceeds arising from the sale of a farm, the legal title to which was in Frank E. Riley, David A. French and Samuel W. Beazell, which said title was acquired in a trade.

On December 6, 1906, the said Riley, French and Beazell were owners of all the capital stock of the Chillicothe Publishing Company of Chillicothe Mo., a corporation having a capital stock of $20,000, divided into 200 shares of the par value of $100 each, and each of the three individuals above mentioned owned 66 2/3 shares of the said capital stock.

This corporation owned and published the Chillicothe Tribune, a newspaper, the publication of which had been begun some years previously by one Ben Beazell, son of Samuel W. Beazell, and son-in-law of defendant David A. French. The newspaper proved to be a losing venture and Ben Beazell induced his father, his father-in-law and Frank E. Riley to sign notes for $4500, as his sureties. Being unable to pay the notes, Ben Beazell turned over all of the capital stock in the corporation to his sureties who ran the paper as such corporation, accumulating additional indebtedness, until December 6, 1906, at which time they contracted to sell the capital stock of said corporation to one Adeline T. Patterson.

By the terms of the sale of the 200 shares, Mrs. Patterson conveyed to Riley, French and S. W. Beazell something over 200 acres of land in Livingston County. They

agreed to pay to her $1600 cash and assume a $5000 mort-
gage on the land, and she agreed to take the capital
stock in the corporation at an agreed valuation of $9000.
Pursuant to this agreement, Mrs. Patterson, on Decem-
ber 11, 1906, conveyed by warranty deed to the said
Riley, French and Beazell all her right, title and interest
in and to said land.

It is in evidence that Riley, French and Beazell dis-
posed of their stock in the corporation because the news-
paper was a losing venture and that they took the farm
with a view to holding it until an acceptable purchaser
therefor could be found. The land was in cultivation
and all the time it was owned by Riley, French and Bea-
zell, it was occupied by a tenant and was leased each year
until it was sold in August, 1919. All such leases, up
to and including the year 1911, were signed by the three
individuals as owners and lessors. Only two leases, as
shown in evidence, were signed otherwise, viz., one in
1915, and one in 1919. These were signed by D. A.
French & Co.

On August 5, 1919, the said Riley, French and S. W.
Beazell executed a contract to sell the farm to C. F. Har-
rison for the sum of $29,120, acknowledging the receipt
of $3120 cash and providing for the payment of $16,000,
on or before March 1, 1920, the purchaser to assume
the payment of a $10,000 trust deed which previously
had been placed on the land by Riley, French and Bea-
zell. A warranty deed was accordingly executed by the
vendors in their individual capacities, conveying the land
to Harrison. A year or two previous to this sale, a man
from Breckenridge, Mo., had contracted for the purchase
of the land, but defaulted in his payments and paid $450
cash to be released from his contract. The testimony
shows this money was divided equally among the three
individual owners.

Riley collected the rents for the farm from the time
of its purchase until 1911, and deposited the money in
his own name in the First National Bank of Chillicothe.

About that time Riley moved to Meadville, Mo., and thereafter the rents were collected by French, and, from July, 1911, a part of the rent was deposited by him in the First National Bank to the credit of D. A. French & Co., and checks were drawn against said account in that name.

Part of the rents, however, were placed by French in the People's Trust Company, in the name of D. A. French, F. E. Riley and S. W. Beazell. The testimony further tends to show that debts contracted at any time before or after the purchase of the farm until its sale to Harrison were contracted in the name of F. E. Riley, D. A. French and S. W. Beazell; that all notes, original and renewals, were signed by F. E. Riley, D. A. French and S. W. Beazell; that practically all of the indebtedness was in existence prior to the time the parties purchased the farm. It is also in evidence that one new debt was created after the purchase of the farm, and that was to the wife of S. W. Beazell, for money loaned, and that the original note and each renewal thereof was signed by Riley, French and Beazell individually. The $16,000 cash was paid by the purchaser of the lands to W. H. Ellett and the People's Trust Company, trustees of the vendors, to be held by them for said vendors in like interest, owned by each in the real estate prior to the said sale, to-wit, one-third each.

On September 1, 1919, F. E. Riley, in writing and for valuable consideration, assigned a part of his interest in said fund to Fred S. Hudson, amounting to $4625. On February 27, 1920, the purchaser of the land paid the said sum of $16,000 into the hands of defendants Ellett and the People's Trust Company, trustees. Thereupon, Hudson and Riley demanded of Ellett and the People's Trust Company the payment to them of the one-third part of said fund, which said payment was refused. Hudson and Riley joined in this suit as parties plaintiff against the People's Trust Company, W. H. Ellett, D. A. French and S. W. Beazell. The suit was filed March 1, 1920.

The petition alleges facts practically as set out above. The separate answer of defendant Ellett is a

general denial. The separate answer of the People's Trust Company is, first, a general denial and as further answer admits that it received the $16,000, as alleged in the petition; states that it has paid out of said fund to S. W. Beazell and D. A. French $5,299 each, and is holding $5,299 of said fund. The answer further charges that the plaintiffs on the one hand and the defendants Beazell and French, on the other, are each claiming the said sum of $5,299; that it claims no interest in said controversy, other than to see that said sum is paid and distributed to the person or persons rightfully entitled thereto, and asks to be permitted to deposit same in the hands of the court pending this suit and that defendants Beazell and French be required to interplead for said fund.

Thereupon the parties agreed, and it was by the court ordered, that defendant People's Trust Company and W. H. Ellett pay the said sum, less $25 attorney's fee, into the hands of the clerk of said court, and that they thereby stand discharged from further liability relative thereto, and that said fund be by the clerk deposited in some bank in Livingston County, Missouri; plaintiffs to file their interplea for said fund on or before August 1, 1920, each interpleader to plead to the interplea of the other interpleader, on or before the first day of the next term of the court.

Accordingly plaintiffs filed their interplea and defendants, French and Beazell demurred thereto and also filed their interplea. Counsel for defendants then filed application of the partnership of D. A. French & Co., composed of D. A. French, S. W. Beazell and F. E. Riley, to be made party to this proceeding and to be permitted to interplead for the fund in controversy, which said application was granted, without thereby determining the question of whether such partnership existed. Such interplea accordingly was filed.

The reply of plaintiffs was a general denial. Plaintiffs thereupon filed an affidavit denying such partnership, and plaintiff Hudson filed an amended reply in which

he avers that he had no knowledge of the alleged partnership, nor of the claim of said defendants that the land mentioned in the interplea was copartnership property; that he had no notice of the claim of said defendants of any partnership debts; that he was a purchaser of the interest of F. E. Riley in good faith and without notice, and for a valuable consideration, and denies that there was a partnership or partnership debts.

In this state of the pleadings, on application of defendant French, a change of venue was granted to the circuit court of Clay County and there the cause was tried to the court. The issues were found in favor of plaintiffs Fred S. Hudson and H. R. Riley (administrator of the estate of Frank E. Riley, deceased). The court further found that said plaintiffs, as interpleaders, are the owners of and entitled to the money in controversy; that plaintiff Hudson is the owner of $4625 and H. R. Riley, Admr., the owner of the remainder, i. e. $649; that neither of the defendants has any interest in and to said fund; and that there was no partnership between D. A. French, S. W. Beazell and Frank E. Riley in and to the real estate described in the pleadings and which was sold by them as individuals, the said sum of money so paid into court being part of the proceeds of such sale; that D. A. French, S. W. Beazell and F. E. Riley were tenants in common, each owning one-third interest in the sale thereof, and that said D. A. French and S. W. Beazell have heretofore received their respective interests in the proceeds of the sale of said real estate.

Motions for new trial and in arrest were duly filed and by the court overruled. Thereupon defendants and interpleaders D. A. French and S. W. Beazell duly appealed to this court.

From out this labyrinth of pleadings and interpleadings it is gleaned that the chief and, in fact, the only question before us is as to whether or not a partnership existed between plaintiff Riley and defendants French and Beazell in the ownership and operation of the land

in question. Upon the proper solution of this question depends the result of this appeal.

Defendants' first point that this being an equity case the court will examine the whole record and determine the case *de novo* is a proper statements of the rule, and in accordance therewith we have examined the whole record. There is but one assignment of error, to-wit: "The judgment and finding of the trial court is not sustained by the evidence. There is no evidence upon which it can be sustained. All the evidence conclusively shows that a partneship was formed and conducted by French, Riley and Beazell, and that the farm was partnership property, held and owned and conducted as such."

A partnership is "an association for the purpose of prosecuting any lawful business formed by contracts between two or more persons." [Anderson's Law Dictionary.] Webster's dictionary, quoting Judge STORY, defines partnership as "The relation existing between two or more competent persons who have contracted to place their money, effects, labor, and skill, or some or all of them in lawful commerce or business, with the understanding that there shall be a communion of profits between them; a copartnership.' This is, practically, the definition given by Chancellor KENT and seems to be most accurate and comprehensive.

One of the chief elements in a partnership, therefore, is a contract and in fact the partnership relation is founded upon voluntary contract. It need not be an express agreement. The conduct of the parties, in the absence of an express agreement, will be regarded as determinative of the existence of a partneship. [Sullivan v. Sullivan, 122 Wis., 326, 99 N. W. 1022.]

The evidence shows that F. E. Riley, D. A. French and S. W. Beazell owned all of the capital stock of the Chillicothe Publishing & Printing Company, a corporation, in the proportion of one-third each, and there is no claim that this was a partnership. It appears the corporation was a losing venture and in order to get their money out of it, the owners traded thier stock therein

for a farm, paying a cash difference, and then proceeded to lease the farm for a number of years. Can we say there was any evidence of an existing partnership? We think not.

Defendants allege and undertake to prove a conversation and agreement between Riley, French and Beazell to the effect that the indebtedness existing at the time of the purchase of the farm be considered as partnership debts to be paid from any profits derived from the leasing or sale of the farm. Under the definition of a partnership, above noted, it must be held that it is not possible to establish a partnership on the basis of the payment of indebtedness. These debts were evidenced by promissory notes signed by the parties individually. The land was held by them individually. We can see nothing in this situation in the least indicative of a partnership.

Counsel urge that partnership lands are regarded as personal property and are held in trust for the payment of the firm's debts and for the security of partners among themselves. Among other citations on this point our attention is called to Barnes v. Stone, 198 Mo. l. c. 480. An examination of this case reveals that the point therein discussed referred to the distribution of the remaining assets of an admitted partnership, after a deed of trust on partnership real estate had been liquidated. We fail to see the application of the ruling in that case to the case at bar.

Other citations by defendants intended to support the contention that the farm was partnership property have been examined, but we fail to find in them any consolation for defendants, because the evidence here does not show the existence of a partnership. The citations referring to undisputed partnerships do not apply.

Defendants further contend and rightly so, that the true method of determining, as between partners themselves, whether or not land standing in the names of individuals is to be treated as partnership property is to ascertain from the conduct of the parties and their course of dealing, the understanding and intention of the part-

ners themselves which, when ascertained, unquestionably should control. Plaintiffs do not deny that this is a correct statement of the rule, but the parties differ as to its application to the facts before us.

Counsel urge that the testimony on behalf of defendants and interpleaders French and Beazell shows that a partnership was formed by agreement with Riley, and that under said agreement, the farm would form the capital and assets of the firm, and the indebtedness should be considered a partnership debt; that the farm should be run as a partnership and the profits and losses, as well as the existing indebtedness, should be paid from the proceeds arising from the operation of the farm and the sale thereof, when consummated. There was testimony introduced to this effect, as stated. Counsel further state there is no contradiction of this evidence.

This statement is true only in a modified way. The testimony of F. E. Riley, in a deposition which was read in evidence, discloses, inferentially at least, that the witness denied he had agreed to a partnership in a conversation with French and Beazell, and stated that if such conversation ever was held he had no recollection of it. This is not a positive denial but viewed in the light of the facts and circumstances in evidence, it is such a statement as may be construed as a denial in fact.

The only other testimony introduced on this point, and upon which defendants rely for a reversal, was that of Ben Beazell and Joe Beazell who stated the conversation did occur, and that it was some time after the purchase of the farm. Neither witness could fix the exact date of said conversation and agreement and we must consider the acts of the parties thereafter in determining whether a partnership agreement in fact did exist.

In this connection all of the testimony tends to show (a) that for the first five years after the farm was purchased the leases all were signed by the three individuals, as lessors; (b) the contract for the sale of the farm was made by the three as individuals; (c) that the warranty deed was executed by them as individuals. We find noth-

ing in these circumstances supporting the theory of a partnership. It is also in evidence that all debts were contracted in the names of the individuals and that the moneys received were divided one-third to each, after the current debts incident to the conduct of the farm were paid. We find these circumstances were sufficient to support the finding and judgment of the court to the effect that a partnership agreement did not exist.

Further, it appears that two of the leases to the farm were executed in the name of French & Company, and that after French took charge of the leasing of the land, he deposited the money and checked against it in that name. It must be conceded that this situation is entirely consistent with plaintiff's contention that there existed only a tenancy in common. The name, French & Company, seems to have been adopted and used by French without authority. A citation of plaintiffs is directly in point:

"Where the conduct and acts of the parties in dealing with the estate may with reason be referred to the office of a tenant in common, the courts in construing those acts will prefer to attribute them to that relation." [Holton v. Guinn, 76 Fed. 96, 100; Dunham v. Loverock, 158 Pa. St. 197; 27 Atl. 990.]

As a further incident supporting plaintiffs' contention that no partnership agreement was in existence, it is proper to direct attention to the fact, as shown by the evidence and as found by the trial court, that said D. A. French and S. W. Beazell had theretofore received their respective interests in the proceeds of the sale of said real estate. This circumstance alone, while perhaps not decisive of the question, strongly negatives the allegation that a copartnership existed. Without going further into a detailed discussion of the question from the various angles presented by defendants, we conclude, from all the facts and circumstances in evidence, that the findings and judgment of the trial court are proper and should be sustained.

Plaintiffs refer to the fact that Hudson was an innocent purchaser for value. This seems not to have been seriously contested by defendants and may be accepted as a fact, as the evidence tends to show. We have read with interest the very able brief of counsel for defendants but fail to find therein any good and sufficient reason for disturbing the finding and judgment of the trial court.

Affirmed. All concur.