**Keith WIRTH, Plaintiff-Respondent,**

v.

**Joseph Leroy WIRTH and Ellen Wirth, Defendants-Appellants.**

**No. 12484.**

Missouri Court of Appeals, Southern District, Division Two.

Jan. 28, 1983.

Robert P. Baker, Sarcoxie, for defendants-appellants.

Herbert Douglas, Douglas, Douglas & Johnson, Neosho, for plaintiff-respondent.

MAUS, Presiding Judge.

By his petition, plaintiff Keith Wirth prayed for the dissolution of a partnership "as provided for by § 358.320", an accounting, a distribution of assets and for general relief. As a foundation for this prayer the petition in substance alleged the following. In April, 1975, the plaintiff and defendants agreed to form a partnership under the name of Wirth Brothers; the partnership was formed and a bank account established in the Bank of Wheaton; the partnership, for the purpose of operating a "farm partnership", acquired three separate tracts of real property; and that from April, 1975, until 1978 the plaintiff received a share of the profits of the partnership. But, that in 1978, because of the defendants' conduct, it became impossible to conduct the partnership business. The defendants denied the allegations of a partnership, but as an alternative prayer sought a dissolution as provided by Chapter 358.

The trial court entered an extensive statement of facts, declarations of law and a judgment in response to the petition. The judgment declared one tract of real property standing in their names to be the property of the defendants and the other two tracts, one standing in the names of the defendants and one in the name of the plaintiff, to be the property of the plaintiff. The plaintiff was also awarded a judgment against the defendants for $28,989.50.

By their basic point of error, the defendants question the sufficiency of the evidence to support the judgment. Plaintiff Keith Wirth and Defendant Joseph Leroy Wirth are brothers. Joseph uses the name Leroy and will be so referred to in this opinion. Defendant Ellen Wirth is the wife of Leroy. In 1975, Leroy and Ellen lived in

Iowa. They wanted to move to Southwest Missouri. Leroy discussed his plans to purchase real property with Keith. Keith at that time was employed as a lot salesman at Bella Vista Development in Northwest Arkansas. In early 1975, Leroy disposed of his interests in Iowa. This was followed by four real estate purchases in Missouri involving Leroy and/or Keith. Keith contends that each purchase was made by or on behalf of the alleged partnership. Leroy contends otherwise. For this opinion the person or persons named as grantee or grantees in the conveyance and who executed the note and deed of trust evidencing and securing the unpaid balance of the purchase price will be referred to as the purchaser or purchasers.

On May 9, 1975, Leroy and Ellen purchased 283 acres (Tract I) in Newton County. Since that purchase Leroy and Ellen have made their home upon that tract. In August, 1975, Keith purchased 240 acres in McDonald County. This property was sold at a profit in April, 1977. In March, 1976, Leroy and Ellen purchased 120 acres (Tract II) in Newton County. In April, 1977, Keith quit at Bella Vista. He entered into a contract to purchase 160 acres from the Roberts. However, when the Roberts became recalcitrant, Keith did not purchase the 80 acres upon which their dwelling was located. In April, 1977, he purchased from the Roberts the remaining 80 acres (Tract III) in Newton County. Tracts I, II and III, each subject to a deed of trust, stood in the name or names of the purchaser or purchasers as aforesaid at the time of trial.

The testimony of Keith and Leroy concerning the acquisition and farming of these tracts is, as expected, diametrically opposed. Much of that testimony is evasive, disjointed, vague and conclusory. It would serve no purpose to recite the evidence in detail. It is sufficient to outline the theory of each party.

Keith contends that before the purchase of Tract I, he and Leroy formed a partnership for the acquisition and farming of real estate. He asserts that after the purchase of Tract I, he advanced money to Leroy for living expenses. He emphasizes that he and Leroy partially cleared and otherwise improved the 240 acres in McDonald County. He contends the proceeds of the sale of that tract were invested in Tract III and partnership farming operations. He admits that he alone received and retained the proceeds from the sale of timber from the McDonald County tract. He said he terminated his employment at Bella Vista so that he could devote full time to partnership farming which he maintains had been conducted from June, 1975, through 1977. When he was unable to purchase the Roberts' dwelling in 1977, he bought and placed a mobile home on Tract I. Somewhat in conflict with his prior testimony of an earlier agreement he said that in April, 1977, in Leroy's dining room they reviewed the partnership and it was agreed he would raise hogs and Leroy would raise cattle. As strong evidence of a partnership, he cites the opening of a bank account in October, 1977, in the names of Joseph Leroy Wirth, Ellen Wirth and Keith Wirth and the checks pertaining thereto bearing the appellation "Wirth Bros."

On the other hand, Leroy and Ellen adamantly denied the formation of a partnership. Leroy testified he bought 283 acres, only upon the understanding that Keith would purchase 80 acres thereof at $500 per acre with an $11,000 downpayment. He accounts for checks written to him by Keith as money to be used for the purchase of real estate for Keith. He disclaims any interest in the McDonald County land and the profits made upon its sale. Leroy says he worked in clearing and improving that tract upon a trade-work basis with his brother. He asserts Keith loaned him $5,830 which he used in making an installment payment on Tract II. He says that in April, 1977, he and Keith at the dining room conference did arrive at an estimate of the assets of each in case they did decide to form a partnership or a corporation. He says they agreed only to the joint production of crops for 1977. The aforesaid bank account was opened only so he could have some control over the proceeds of the crops. He states the appellation "Wirth Bros." was added without his knowledge.

It was undisputed that title to the farming equipment of Leroy and Keith was in their individual names and that such items were individually financed. With the exception of the crops for 1977 and account in the Bank of Wheaton, each handled his own funds and affairs. In dealing with the ASCS Office, each declared they farmed as individuals. No partnership records were maintained. No partnership tax returns were filed. Keith reported his real estate and farming activities upon his individual tax returns. Leroy did not file tax returns for the years in question.

■ It was upon this basis the trial court found there was a partnership. By clear implication, it was found to have been formed in April, 1975. A partnership is defined by statute as "an association of two or more persons to carry on as co-owners a business for profit." § 358.060.1. "A partnership has been judicially defined as 'a contract of two or more competent persons to place their money, effects, labor and skill, or some or all of them, in lawful commerce or business and to divide the profits and bear the loss in certain proportions.'" *Kielhafner v. Kielhafner,* 639 S.W.2d 288, 289 (Mo.App.1982). The rules to be used in determining the existence of a partnership are set forth in § 358.070. A partnership agreement "may be either oral or written, verbally expressed or implied from the acts and conduct of the parties themselves." *Stein v. Jung,* 492 S.W.2d 139, 144 (Mo.App.1973). However, "the purported partners must have made a definite and specific agreement proved by cogent, clear and convincing evidence, or at least by a preponderance of the credible evidence . . . ." *Brotherton v. Kissinger,* 550 S.W.2d 904, 907 (Mo.App.1977). Also see *Grissum v. Reesman,* 505 S.W.2d 81 (Mo.1974). "Helping out" on a trade-work basis or otherwise is not proof of a partnership. *Brotherton.* Nor is the sharing of profits as wages. *Stein.* Unless a contrary intent appears, property acquired with partnership funds is partnership property. § 358.080.2. Otherwise, "[a] party's contribution to a partnership may be money, property, skill or labor or some or all of

these." *Kolb v. Dietz,* 454 S.W.2d 632, 637 (Mo.App.1970). Partnership property may be held in individual names. *Gates Rubber Co. v. Williford,* 530 S.W.2d 11 (Mo.App. 1975). Also see § 358.100. Concerning the contribution of real property, see Annot., Partner's Realty As Asset of Firm, 45 A.L. R.2d 1009 (1956). It is clear "[t]he burden of proof in this case rests, of course, with the plaintiff, and failure to carry the yoke placed upon him results in failure of relief sought." *Kielhafner,* at pp. 289–290.

■ The judgment of the trial court is to be reviewed under the precepts of *Murphy v. Carron,* 536 S.W.2d 30 (Mo. banc 1976). It is to be sustained "unless there is no substantial evidence to support it, unless it is against the weight of the evidence, unless it erroneously declares the law, or unless it erroneously applies the law." *Murphy,* at p. 32. It should be set aside as " 'against the weight of the evidence' with caution and with a firm belief that the decree or judgment is wrong." *Murphy,* at p. 32. Because of the vague and often illusory nature of the testimony previously noted and the inadequate testimonial developments of the issues, the consideration of the sufficiency of the evidence is difficult. Without the benefit of the typed transcript, this would be even more difficult. However, this court has scoured the record and has the firm belief that many findings fundamental to the judgment are against the weight of the evidence and in many instances are not supported by substantial evidence. It is not necessary to review all of the findings of the trial court. Two serve well to demonstrate why the judgment must be reversed.

The trial court found the partnership was formed in April, 1975. A discussion between the brothers in a cafe in Anderson is cited for the foundation of the partnership. Leroy denied a partnership was formed at any time. While Keith contends a partnership was discussed in the cafe, the record is barren of any testimony that a partnership was then formed. In speaking of that conference as it concerned Tract I, Keith testified, "If I'd pay for 80 acres of it, he would

deed 80 acres to me and I would pay in on it on a—over the course, a downpayment." There is no evidence that in anyway links Ellen to any alleged partnership until the dining room discussion of April, 1977. Many of the remaining findings of the trial court are so interrelated with this finding that they too must fall. This is demonstrated by the finding that from the spring of 1975 to February of 1978, the brothers both worked together in both farming operations and farmed the land and sold the crops and were raising hogs and cattle for the purpose of making a profit. There is no evidence to support this finding. It is contrary to Exhibits 11 and 12, financial charts prepared at the direction of Keith. It is also appropriate to observe there is nothing in the record to clearly declare the scope of the partnership business, the division of the profits and losses, or any agreement concerning management of the partnership affairs. Nor is there any evidence to clearly establish the capital contributed to an alleged partnership by each brother. There is a gross difference between the contribution of the use of an asset as distinguished from the contribution of the asset itself to a partnership. *Hudson v. French,* 211 Mo. App. 175, 241 S.W. 443 (1922). This is particularly true since the alleged assets of the partnership included real property. Annot., Partner's Realty As Assets of Firm, 45 A.L. R.2d 1009, supra.

Further, the vulnerability of the judgment is underscored by the fact the real estate was distributed and the money judgment entered upon the basis of a financial summary prepared by Keith's wife under his direction. Exhibit 13. This vulnerability is established by the fact it was prepared upon the basis of unacceptable estimates. It is established by the fact it admittedly did not take into account that portion of Keith's $40,110 gross farm receipts for 1978, which were attributable to Tract III. It is made obvious by the method used in arriving at the money judgment, which reflected the distribution of the real property. The judgment was based upon Keith's estimate of the assets and the value of the assets of each party. There was then deducted from the assets of each party, Keith's estimate of the capital invested by each party. This resulted in calculations that Leroy had a net gain of $38,413 and that Keith had a net loss of $19,566. When the figure of Keith's loss of $19,566 is subtracted from Leroy's gain of $38,413, the result is $18,847. When this figure is divided by 2, the result is $9,423.50. When this figure is added to the figure of Keith's net loss of $19,566, the result is $28,989.50, the amount of the money judgment. When the money judgment is subtracted from Leroy's alleged net gain of $38,413, he has a net gain of $9,423.50. When the equity in Tract II, valued at $6,709 and awarded to Keith, is subtracted, Leroy has a net gain of $2,714.15. Partnership profits, losses and withdrawals must also be considered.

■ Further, another point must be mentioned lest this opinion be construed as providing authority to be followed in the dissolution of a partnership. Keith testified there was an agreement concerning the distribution of the real estate. The trial court so found. However, the judgment is not based upon a dissolution by agreement. Compare *Cohoon v. Cohoon,* 627 S.W.2d 304 (Mo.App.1981); *Stuart v. Overland Medical Center,* 510 S.W.2d 494 (Mo.App.1974). Both parties prayed for a dissolution under § 358.380. In addition to the infirmities noted, the judgment does not take into consideration returning the capital contributed by each party. The judgment does not make the determinations required for the dissolution of a partnership under Chapter 358. *Schoeller v. Schoeller,* 497 S.W.2d 860 (Mo.App.1973); *Bass v. Daetwyler,* 305 S.W.2d 339 (Mo.App.1957).

While the judgment must be reversed, there is evidence that at sometime some type of joint venture was undertaken. For example, Leroy declared "[h]is net worth was more at the day he left than the day he came in." The duty of this court "to make final disposition of the case on appeal presupposes a record and evidence upon which we can perform this function with some degree of confidence in the reasonableness, fairness and accuracy of our conclusion;

and when such record and evidence are not presented, reversal and remand necessarily follow". *Capoferri v. Day,* 523 S.W.2d 547, 558 (Mo.App.1975). Justice requires that the judgment of the trial court be reversed and the cause is remanded for a new trial on all issues.

HOGAN and PREWITT, JJ., concur.