Jess STAFFORD, Plaintiff–Respondent,

v.

Donald L. McCARTHY, Defendant,

and

Pat McCarthy, Defendant–Appellant.

No. 17249.

Missouri Court of Appeals,
Southern District,
Division One.

March 9, 1992.

Richard L. Schnake, Neale, Newman, Bradshaw & Freeman, Springfield, Ralph W. Gilchrist, Bolivar, for defendant-appellant.

Kerry D. Douglas, Verna Lee Haun, Douglas, Lynch, Munton & Haun, P.C., Bolivar, for plaintiff-respondent.

CROW, Judge.

This case (number CV789–35CC in the trial court) involves an allegedly fraudulent transfer by Donald L. McCarthy ("Don") to his wife, Patsy Jean McCarthy ("Pat"), of his interest in a partnership. The trial court awarded Jess Stafford ("Plaintiff") a money judgment against Pat. She appeals, presenting three assignments of error.

The issues we must resolve are easier addressed after a recital of the extensive and intricate facts. In narrating them, we honor the rule that on review, an appellate court accepts as true the evidence and inferences from it favorable to the trial court's judgment and disregards contrary evidence. *T.B.G. v. C.A.G.*, 772 S.W.2d 653, 654[2] (Mo. banc 1989). Any fact issue on which no finding was made is considered to have been found in accordance with the judgment. *Id.* at 654[3]. Credibility of the witnesses and the weight to be given their testimony was a matter for the trial court, which was free to believe none, part, or all of the testimony of any witness. *Herbert v. Harl*, 757 S.W.2d 585, 587[1] (Mo. banc 1988).

On December 16, 1985, in case number CV785–127CC styled "Jess Stafford, d/b/a Stafford Insurance Company, Plaintiff, vs. Donald L. McCarthy et al., Defendants," the Circuit Court of Polk County rendered judgment for Plaintiff and against Don for $8,005.03, together with interest "at 9% from December 13, 1984," and an $800.50 attorney fee plus interest from date of judgment "at 9% per annum."

On January 24, 1986, Don signed a "Lease Agreement" with Venture Drilling, Inc. ("Venture"), a corporation owned by his brother, Wayne. By the agreement, Don leased from Venture two pieces of equipment: (1) a drilling rig and a 1972 International truck on which the rig was mounted, and (2) a "tool truck." The agreement required Don to pay Venture: (a) an initial sum of $41,203 by cancelling a promissory note owed by Venture to Don, and (b) thirty-six monthly installments of $938. The agreement provided that title to the equipment remained with Venture. Although not spelled out in the agreement, it was the understanding of the parties that when all lease payments had been made, both pieces of equipment would belong to Don.

Don took possession of the equipment and used it in his well drilling business, McCarthy Drilling Company.

On August 8, 1986, Don married Pat. According to Don, when they married she "put" about $10,000 into McCarthy Drilling. The funds were used for "operating expense." Don recounted that after the marriage, he and Pat operated McCarthy Drilling as "a husband and wife operation."

Shortly after the marriage, Venture requested Pat to sign the Lease Agreement. She did, and her name was added as a lessee. With this addition, the agreement showed the lessee as: "Donald L. McCarthy & Patsy J. McCarthy, Husband & Wife." Pat testified she understood this made her "jointly liable" with Don for the lease payments.

According to Pat, from and after August 28, 1986, all lease payments were made from a "husband and wife" bank account "jointly owned" by her and Don.

Don testified that after Pat's name was added to the lease, the understanding was that when all lease payments had been made both pieces of equipment would become his and Pat's "as husband and wife."

The 1987 United States income tax return filed by Don and Pat showed a deduction for depreciation on a drill rig with a "basis for depreciation" of $33,797.

On January 15, 1988, the Circuit Court of Polk County held a hearing in CV785–127CC on Plaintiff's "Application for Order Charging Interest of Debtor Partner with Payment of Unsatisfied Amount of Judgment." The application was made per § 358.280, RSMo 1986, which reads, in pertinent part:

1. On due application to a competent court by any judgment creditor of a partner, the court ... may charge the interest of the debtor partner with payment of the unsatisfied amount of such judgment debt....

. . . .

At the conclusion of the hearing, the court found a partnership then existed between Don and Pat known as McCarthy Drilling Company and that Don's interest "is subject to a charging order."

On January 20, 1988, five days after the hearing, Don and Pat signed an "Agreement to Dissolve Partnership" providing, in pertinent part:

Whereas, the parties commenced a business known as MCCARTHY DRILLING in June of 1986, and whereas, the parties were married August 8, 1986 and there after [sic] sought to continue said business, and whereas, the parties derive [sic] to mutually agree to dissolve any interest in such business, which could be designated as a partnership interest, and whereas, [Pat] contributed TEN THOUSAND ... DOLLARS to commence said business, and has never been repaid said amount as originally agreed between the parties.

Now therefore, it is mutually agreed between the parties, that any and all partnership interests between the parties be and are hereby dissolved.

It is further agreed that any and all partnership assets due [sic] of a value of less than TEN THOUSAND DOLLARS, and that [Don] assigns assets over, and transfers to [Pat], all his rights, title, and whereas in and to said partnership, and partnership assets to [Pat] in satisfaction of his obligation on the indebtedness owed by such partnership to [Pat].

It is further understood, and agreed between the parties that the business shall be conducted in record with its operation as a husband and wife sole proprietorship as shown by the lease of a DRILLING RIG, TOOL TRUCK, TOOLS AND EQUIPMENT, and in accordance with a tenents [sic] by the entirety business bank account.

That ... in satisfaction of the partnership obligation to [Pat] of said TEN THOUSAND ($10,000.00) no partnership assets of interest remains to be accounted for in dissolution.

. . . .

On February 23, 1988, the Circuit Court of Polk County entered an order in CV785–127CC based on its findings at the January 15, 1988, hearing. The order provided, in pertinent part:

On January 15, 1988 ... Donald McCarthy and Pat McCarthy appear in person and by Attorney.... Plaintiff appears by Attorney....

WHEREUPON, evidence is adduced by both parties. After seeing and hearing the same ... the Court finds as follows:

. . . .

2. That Donald McCarthy and Pat McCarthy are partners in a partnership known as McCarthy Drilling Company.

3. That Plaintiff has received a judgment against Defendant Donald L. McCarthy in the amount of Eight Thousand Five and 03/100 Dollars ... principal; interest at nine percent ... per annum from December 13, 1984; and attorneys fee of Eight Hundred and 50/100 Dollars.... The judgment remains unsatisfied.

4. That the interest of Donald McCarthy in the partnership of McCarthy Well Drilling is subject to a charging order as provided by law.

WHEREFORE, IT IS ORDERED, ADJUDGED AND DECREED ... that Donald McCarthy and Pat McCarthy are partners in a partnership known as McCarthy Drilling Company.

IT IS FURTHER ORDERED, ADJUDGED AND DECREED ... that the

interest of Donald McCarthy in such partnership is hereby charged with Plaintiff's judgment under ... Section 358.280 RSMo.

The record demonstrates no appeal was taken from the above order.

Don and Pat continued to operate McCarthy Drilling as before, with Don "managing the day-to-day operations."

On September 12, 1988, the Circuit Court of Polk County entered an order in CV785–127CC directing issuance of an execution against Don's interest in the "partnership of McCarthy Well Drilling." An execution issued per that order bears a sheriff's return dated November 16, 1988, reciting a "failure to find anything to levy upon."

The 1988 United States income tax return filed by Don and Pat showed a deduction for depreciation on a drill rig with a "cost" of $33,797.

On March 8, 1989, Plaintiff commenced the instant action (number CV789–35CC) in the Circuit Court of Polk County. His petition averred, in pertinent part, that by the agreement of January 20, 1988, Don purported to convey his interest in the partnership, McCarthy Drilling Company, to Pat, but Don continued to own and control his interest. The petition further pled:

12. [Don's] interest ... was conveyed to ... Pat ... for the purpose of hindering, delaying, defrauding and defeating Plaintiff in the collection of the judgment [in CV785–127CC].

13. ....

14. [Don] owns no other property except property owned in tenancy by the entirety.

15. Unless the property aforesaid can be reached and applied to the payment of Plaintiff's judgment, the judgment will remain unpaid.

16. Plaintiff has no adequate remedy at law.

WHEREFORE, Plaintiff ... prays for a decree that [Don's] conveyance of his partnership interest to his wife ... Pat ... be adjudged fraudulent and void as against Plaintiff; that the partnership interest be adjudged to be the property of [Don]; that the partnership interest be ordered ... sold for the satisfaction of Plaintiff's judgment, and that Defendants ... in the meantime be enjoined and restrained from disposing of said property, or paying out any of the proceeds thereof....

Don and Pat submitted a financial statement dated May 22, 1989, to a Bolivar bank. A list of assets in the statement included a drill rig valued at $75,000 and a tool truck valued at $15,000.

According to Don and Pat, the final payment to Venture on the Lease Agreement was made in either June or July, 1989. Venture thereupon transferred "title" to both pieces of equipment to Don and Pat "as husband and wife."

On January 8, 1990, the trial court set the instant case for trial June 25, 1990. It was tried as scheduled.

At trial, Don was asked what had happened to the tool truck. He answered, "I still have it." Questioning continued:

Q. In whose name is it titled?

A. Pat; mine and my wife's.

Asked about the drilling rig, Don revealed he had disposed of it in March, 1990. Then, this:

Q. What happened to it?

A. Me and my wife ... traded it for stock in Ground Source.

Q. And what is Ground Source?

A. It's a corporation....

Q. And are you a shareholder now in that corporation?

A. I have one share.

Q. And how much was the drill rig worth at the time that you traded it for the shares?

....

A. Well, it was traded for 550 shares of stock.

....

Q. How much was the purchase price of the shares of stock?

A. Five-hundred and fifty dollars.

....

Q. ... Do you have an opinion as to the value of the drill rig on the date that

you transferred it for the shares of stock?

. . . .

A. Probably $55,000.00.

. . . .

Q. Mr. McCarthy, the shares of stock in Ground Source, are those held by you alone or are they held by you and Patsy?

A. I have just got one. Patsy has the rest.

Q. ... How many shares does she own?

A. Well, she owns 549.

Asked whether she received anything for the drilling rig and the truck on which it sat except the 549 shares of stock, Pat disclosed she received a note for "probably $57,000.00 some dollars." She is president of Ground Source.

The trial court found a partnership was created by Don and Pat in June, 1986, prior to their marriage. The trial court evidently based this finding on the agreement of January 20, 1988, which, as we have seen, recites Don and Pat commenced business as McCarthy Drilling in June of 1986. The trial court found Don and Pat "treated the drilling rig and truck as tangible assets on their tax schedule depreciation."

The trial court further found Pat contributed $10,000 to the partnership and that the partnership had a value of $40,000 on January 20, 1988, when Don transferred all his rights and title in the partnership and its assets to Pat.

The trial court ruled the transfer of the total assets of the partnership upon dissolution to Pat constituted a fraud upon Plaintiff. Consequently, held the trial court, Pat is liable to Plaintiff for his judgment against Don to the extent of the value Pat received above her investment, to-wit: $30,000.

The trial court entered judgment in favor of Plaintiff and against Pat for $8,004.02 with interest thereon "at 9% from December 13, 1984," and "attorney fees of $800.50 awarded in CV785–127CC." [1]

The first of Pat's three points relied on reads:

The trial court erred in entering a money judgment against ... Pat ... because she did not receive the benefits of the drilling rig and truck in question through dissolution of the partnership that the trial court found to exist between her and [Don], in that the drilling rig and truck were never property of any such partnership but were instead owned by Don and Pat as husband and wife and thus as tenants by the entirety.

The point's reference to "the drilling rig and truck" is ambiguous in that there were *two* trucks. The drilling rig was mounted on one; the other is referred to in the record as a "tool truck." In an effort to identify the truck to which the point refers, we look to the argument following Pat's first point. She begins the argument by referring to "the drilling rig and the truck on which it was mounted." She does not mention the tool truck. We thus assume that when she speaks of "the drilling rig and truck," she means the truck carrying the rig. Accordingly, when we refer to that piece of equipment in this opinion, we shall employ the term "drilling rig/truck." When we quote from Pat's brief we shall, of necessity, use her terminology.

Pat's thesis, succinctly articulated in the argument portion of her brief, is: "[Because] the only evidence is that Don and Pat owned the rig and truck as husband and wife, that equipment was never partnership property, even assuming, without conceding, that a partnership in fact existed. The trial court did not find that there were any other assets in the partnership, and in fact none existed. Its judgment against Pat, premised on its assumption that she obtained the drilling rig and the truck from the partnership, must be reversed."

Pat maintains there is no evidence indicating the purported partnership entered into the Lease Agreement with Venture. Pat points out the agreement originally

---

**1.** In principal amount and provision for interest, the judgment in CV785–127CC and the judgment in the instant case are not identical. The differences are unexplained, and no issue is raised about them in this appeal.

identified Don as the lessee, and after the marriage the agreement was changed to show the lessee as "Donald L. McCarthy & Patsy J. McCarthy, Husband & Wife." Additionally, Pat reminds us there was uncontradicted evidence that "title" to the drilling rig/truck was conveyed to her and Don as husband and wife after all payments had been made. Consequently, argues Pat, the drilling rig/truck was owned by her and Don as tenants by the entirety, not as partners.

The scope of our review in this judge-tried case is set forth in Rule 73.01(c), Missouri Rules of Civil Procedure (1991), as construed by *Murphy v. Carron*, 536 S.W.2d 30, 32[1] (Mo. banc 1976). The judgment of the trial court will be sustained unless there is no substantial evidence to support it, unless it is against the weight of the evidence, unless it erroneously declares the law, or unless it erroneously applies the law.

We first consider whether the evidence was sufficient to support the trial court's finding that Don and Pat created a partnership in June, 1986, before their marriage.

■ The "Agreement to Dissolve Partnership" signed by Don and Pat on January 20, 1988 (quoted earlier), recites they commenced a business known as McCarthy Drilling in June, 1986. As this was before the marriage, they obviously could not have owned McCarthy Drilling as tenants by the entirety when they started it. It is equally clear McCarthy Drilling was not a corporation, and there was no evidence suggesting Pat's $10,000 was a gift or a loan to Don. On the contrary, the agreement recites Pat "contributed" $10,000 "to commence said business," and it also recites Don is transferring to Pat all his rights and title in the partnership and its assets "in satisfaction of the partnership obligation to" her. This sounds like a return of a capital contribution to Pat upon dissolution of a partnership. *See: Wirth v. Wirth*, 646 S.W.2d 394, 397[4] (Mo.App. 1983).

Furthermore, on January 15, 1988 (five days before Don and Pat signed the "Agreement to Dissolve Partnership"), the Circuit Court of Polk County made the finding in CV785–127CC that a partnership existed between Don and Pat known as McCarthy Drilling Company and that Don's interest was subject to a charging order per § 358.280, RSMo 1986. That finding was set forth in the order filed February 23, 1988, in CV785–127CC. As reported earlier, no appeal was taken from that order. Pat is therefore estopped from challenging that finding in this appeal. *Gates Rubber Co. v. Williford*, 530 S.W.2d 11, 14[2] (Mo.App.1975).

For the above reasons, we hold the record amply supports the trial court's finding that Don and Pat created a partnership, McCarthy Drilling Company, in June, 1986.

Don and Pat must have believed they held an interest in the drilling rig/truck prior to receiving "title" to it when the final payment was made to Venture in June or July, 1989. As we have seen, they claimed depreciation on it in their 1987 and 1988 United States income tax returns.

■ As to whether Don and Pat did indeed acquire an interest in the equipment covered by the Lease Agreement prior to receiving "title," the trial court found the Lease Agreement was a "lease/purchase agreement" subject to Article 9 of the Uniform Commercial Code, §§ 400.9–101 to 400.9–507, RSMo 1986, as amended.

As Plaintiff points out, § 400.9–102(2), RSMo Supp.1988, states: "This article applies to security interests created by contract including ... title retention contract and lease ... intended as security." Section 400.9–202, RSMo 1986, states each provision of Article 9 with regard to rights, obligations and remedies applies "whether title to collateral is in the secured party or in the debtor." Section 400.1–201(37), RSMo Supp.1988, defines security interest as: "... an interest in personal property ... which secures payment or performance of an obligation. ... Unless a lease ... is intended as security, reservation of title thereunder is not a 'security interest'.... Whether a lease is intended as security is to be determined by the facts of each

case...." Section 400.9–311, RSMo 1986, states: "The debtor's rights in collateral may be voluntarily or involuntarily transferred (by way of ... attachment, levy, garnishment or other judicial process)...."

In her brief, Pat states: "If ... the trial court was correct in its finding that the Lease Agreement was a 'lease/purchase agreement' that was 'subject to Article 9 of the Uniform Commercial Code,' ... which presumably means that the Lease Agreement was in effect an installment sale contract with the lease language used as security to insure that the payments were made, it may have been proper for the drilling rig and the truck to be ... depreciated on the tax returns."

Given the uncontradicted evidence that upon receiving the final payment called for by the Lease Agreement, Venture transferred "title" to the equipment covered by the agreement to Don and Pat, we hold the evidence sufficient to support the trial court's finding that the agreement was a "lease/purchase agreement" whereby the lessee would become owner of the equipment upon making the final payment, with Venture retaining "title" until then as security to ensure all payments were made. *See: Commercial Credit Equipment Corp. v. Parsons,* 820 S.W.2d 315, 319–20 (Mo.App.1991). Therefore, Don and Pat had an interest in the drilling rig/truck prior to receiving "title" to it in 1989.

If that interest was partnership property, § 358.080.1, RSMo 1986, instead of entirety property, Don's interest in the equipment covered by the Lease Agreement was charged with the unsatisfied amount of Plaintiff's judgment in CV785–127CC by the charging order entered in that case.

Obviously, the pivotal issue in Pat's first point is whether her and Don's interest in the equipment covered by the Lease Agreement was partnership property or entirety property.

▋ Where property is owned in tenancy by the entirety, each spouse is seized of the whole or entirety and not of a share, moiety or divisible part. *McElroy v. Lynch,* 232 S.W.2d 507, 509[1] (Mo.1950). That is, each spouse owns an undivided interest in the whole of the property and no separate interest. *Vaughn v. Spitz,* 682 S.W.2d 847, 849[6] (Mo.App.1984).

In the "Agreement to Dissolve Partnership," Don purported to transfer to Pat all his rights and title in the partnership and its assets. As noted earlier, Pat concedes in her brief that if the equipment covered by the Lease Agreement was not partnership property, the partnership had no assets.

Consequently, if the equipment covered by the Lease Agreement was entirety property, Pat received nothing from the partnership upon its dissolution. Said another way, if the interest of Don and Pat in the equipment covered by the Lease Agreement was owned by them as tenants by the entirety, Pat owned the whole of such interest, not a share, moiety or divisible part. She and Don owned an undivided interest in the whole, not separate interests. It therefore follows that if Pat's and Don's interest in the equipment covered by the Lease Agreement was held by them as tenants by the entirety, Pat received nothing for her $10,000 contribution upon dissolution of the partnership.

The trial court was obviously persuaded that the interest held by Don and Pat in the equipment covered by the Lease Agreement was partnership property, not entirety property. It will be recalled that the trial court found the partnership had a value of $40,000 on January 20, 1988, when Don ostensibly transferred all his rights and title in the partnership and its assets to Pat. This finding was apparently based on Don's testimony that the "drill rig" was "worth at least $40,000.00 on January 20th of 1988."

▋ At trial, Pat admitted that in the "Agreement to Dissolve Partnership," she extinguished the $10,000 debt the business owed her "in exchange for assets of the partnership." In determining whether an asset standing in the names of individuals who are partners is to be treated as partnership property, a court may ascertain from the conduct of such individuals and their course of dealing the understanding

and intention of the partners themselves, which, when ascertained, unquestionably should control. *Cf. State Automobile and Casualty Underwriters v. Johnson*, 766 S.W.2d 113, 122[5] (Mo.App.1989); *Hudson v. French*, 211 Mo.App. 175, 241 S.W. 443, 446[5] (1922). The trial court could have reasonably found Don and Pat were treating their interest in the equipment covered by the Lease Agreement as partnership property, otherwise there was no partnership property for Pat to receive in repayment of her $10,000 contribution.

The trial court was not compelled to accept Pat's premise that (a) she and Don acquired no interest in the equipment covered by the Lease Agreement until they received "title" to it in 1989, and (b) when they acquired title, it was as tenants by the entirety.

Don admitted he and Pat signed the "Agreement to Dissolve Partnership" because of the ruling five days earlier in CV785–127CC that McCarthy Drilling Company was a partnership and Don's interest was subject to a charging order. Had the partnership owned no assets, there would have been no apparent reason to dissolve the partnership, as there would have been nothing to transfer to Pat. Because the partnership admittedly had no assets other than the equipment covered by the Lease Agreement, the trial court could have reasonably found Don and Pat held their interest in that equipment as partners, not as tenants by the entirety, and that they wanted to place Don's partnership interest in that equipment beyond Plaintiff's reach by dissolving the partnership and transferring Don's interest to Pat.

We hold there is substantial evidence to support the trial court's implicit finding that the drilling rig/truck was partnership property, not entirety property, and that such finding is not against the weight of the evidence. Pat's first point is denied.

Her second point reads:

The trial court erred in entering a money judgment against … Pat … because

such a judgment is outside the scope of the pleadings, and [Plaintiff] cannot now claim that such a judgment is appropriate, in that nothing in … the petition demands a recovery of money from [Pat], and [Plaintiff] specifically pleaded that he had no adequate remedy at law.

In considering this complaint, we bear in mind that when Plaintiff filed his petition in the instant case March 8, 1989, Venture had not yet transferred "title" to the equipment covered by the Lease Agreement to Don and Pat. By January 8, 1990, when the trial court established the trial date as June 25, 1990, Don and Pat had received "title" from Venture.

At trial, it was revealed that Don and Pat had "traded" the drilling rig/truck in March, 1990, for a note and 550 shares of stock in a corporation. Don disclosed he received one share and Pat the other 549. Inferably, the note is payable to Pat. Thus, by trial time Don and Pat had disposed of the major item of partnership property that should have been subject to the charging order against Don's interest in the partnership.[2]

*Lewis v. Barnett*, 694 S.W.2d 743 (Mo. App.1985), while not factually identical with the instant case, supplies ample authority to support the money judgment against Pat. In *Lewis*, a suit in equity regarding a fraudulent conveyance, the trial court awarded a judgment creditor a lien on a parcel of real estate which a judgment debtor had attempted to place beyond the creditor's reach by forging a deed. The parcel was sold, apparently during the litigation, and the lien also purported to cover the sale proceeds. Recognizing the lien "may be an inadequate remedy" because certain individuals were not parties to the suit, the *appellate court* awarded the judgment creditor a personal judgment against two parties in addition to upholding the relief awarded by the trial court. *Id.* at 747.

---

**2.** We are mindful Don testified the tool truck was still titled in his and Pat's names. However, Pat's brief focuses on the drilling rig/ truck, not the tool truck, presumably because the drilling rig/truck was the asset of greater value.

Here, the evidence demonstrated that the relief prayed for by Plaintiff in his petition, i.e., setting aside Don's transfer of his interest in the partnership to Pat, would be an inadequate remedy in that the principal item of partnership property—the drilling rig/truck—had been disposed of by Don and Pat after the case was set for trial. Setting aside Don's transfer of his interest in the partnership to Pat would not subject the drilling rig/truck to the charging order against Don's share of the partnership, as the drilling rig/truck was owned by the corporation when the case was heard by the trial court.

When a court of equity once acquires jurisdiction of a cause, it will not relax its grasp upon the res until it shall have avoided a multiplicity of suits by doing full, adequate and complete justice between the parties. *Rains v. Moulder*, 338 Mo. 275, 90 S.W.2d 81, 85[9] (1936). In 37 C.J.S. *Fraudulent Conveyances* § 444 (1943), we learn:

> Although, as a general rule, a fraudulent transferee is not liable to a personal judgment in favor of the creditor as long as the property remains in his possession, nevertheless in some circumstances, as where he has placed the property beyond the reach of the creditor, the transferee will be held liable, although only to the extent of the value of the property subject to the claim.

If, as held in *Lewis*, a lien *and* a money judgment are permissible where necessary for adequate relief in an action attacking a fraudulent transfer, certainly a money judgment alone (as awarded by the trial court here) is authorized where no other remedy is adequate. Any relief other than a money judgment against Pat would have been meaningless. Pat does not argue otherwise.

The prayer is no part of the petition and may be disregarded in determining what relief, if any, is authorized by the petition. *Caldwell v. Eubanks*, 326 Mo. 185, 30 S.W.2d 976, 980[12] (1930). Whether Plaintiff was entitled to any of the relief prayed for does not matter, provided he was entitled to some relief on the facts stated. *Id.* Pat's second point is denied.

Her third point avers the trial court erred in awarding the money judgment in that the trial court relied on *Lewis, supra,* which involved a civil conspiracy. Pat asserts Plaintiff did not plead a civil conspiracy and the evidence established none.

Our reading of *Lewis* does not indicate the appellate court based its decision to award a money judgment on a finding of "civil conspiracy." While the term "conspiracy" appeared in the judgment creditor's petition, the term "civil conspiracy" does not appear in either the findings of the trial court or the opinion of the appellate court.

Pat's third point is denied.

Judgment affirmed.

PREWITT, P.J., and PARRISH, J., concur.