**Mildred P. MASSEY, Appellant,**

v.

**William M. MASSEY, Respondent.**

**No. WD 30411.**

Missouri Court of Appeals, Western District.

Dec. 31, 1979.

 

Robert E. Sharp, Kansas City, for appellant.

Richard L. Colbert, Kansas City, for respondent.

PRITCHARD, Judge.

The issues are whether the trial court, on August 10, 1978, had authority to set aside and to be for naught held a previous decree of property division and distribution of marital assets entered on Nov. 20, 1975; and whether there was a showing by respondent of changed circumstances since the date of the original decree justifying a reduction of a maintenance award to appellant ex-wife.

The first issue involves the part of the original dissolution decree awarding appellant an undivided one-half interest in respondent's Federal Aviation Administration Employee Retirement Plan (Employee No. 52300), and a one-half interest in all of respondent's U. S. savings bonds. Although respondent did not plead that this portion of the decree was void because of lack of uncertainty, and presented the matter for the first time on this appeal, the trial court undertook to hold it void, apparently under a prayer for other general relief. Because the trial court decided the issue, this court will consider it under the plain error rule in its discretion. Rule 84.13(c). On its face, a judgment which does not state a sum certain, and which requires evidence beyond the record to ascertain the amount due, is void. *LaPresto v. LaPresto*, 285 S.W.2d 568, 570[2, 3] (Mo.1955), and cases and authority cited; *Rodden v. Rodden*, 527 S.W.2d 41 (Mo.App.1975); Anno. 55 A.L.R.2d 723. There is, however, another rule that if the trial court has jurisdiction of the parties and subject matter (as originally here), its judgment is not void on its face. *Scott v. Scott*, 441 S.W.2d 330, 333[4] (Mo. 1969). This is yet followed by another rule stated in *State ex rel. Whatley v. Mueller*, 288 S.W.2d 405, 410[5–7] (Mo.App.1956), "It is elementary that the judgment and its

enforcement is the end of litigation, and therefore it is essential that the judgment dispose of the matters at issue so that the parties may be able to ascertain with reasonable certainty the extent to which their rights may be fixed. Freeman on Judgments, Vol. 1, Sec. 72, p. 126. A principle auxiliary to determining whether the judgment meets the above requirements is announced in 49 C.J.S., Judgments, § 72, p. 192, in this language: 'An obscure judgment entry may, however, be construed with reference to the pleadings and *record*, and, where on the *whole record* its sense can be clearly ascertained, the judgment will be upheld.' * * * Even though the judgment may not be complete within itself, and contain within its four corners the mandate of the court, it is nevertheless sufficient if it can be made perfect by reference to the pleadings or papers on file in the case. 49 C.J.S., Judgments, § 62b, pp. 182, 183. This rule applies with equal force to the amount of the judgment, 49 C.J.S., Judgments, §§ 76, 442, pp. 198, 199, 873." The trial transcript of the original dissolution proceedings is not before this court, and apparently was not before the trial court in this proceeding. This necessitates reversal of that part of the judgment declaring the previous decree of property division void, and remand for the purpose of ascertaining if the pleadings, files and record (including the transcript) will clarify the original judgment entry. If clarification is not possible, it will require the declaration that this portion of the original decree is void because it is unenforceable. In that event, the matter of division of this marital property will not have been adjudicated, and the matter may be reopened for the purpose of ascertaining the amount of U. S. savings bonds, and the value of respondent's FAA employee retirement plan as of the date of dissolution of the marriage. In connection with this latter determination, if it is necessary, the parties may be guided by this further authority: A husband's retirement benefits may be marital property, *In re Marriage of Powers*, 527 S.W.2d 949 (Mo.App.1975); *Nilges v. Nilges*, 564 S.W.2d 262 (Mo.App.1978); *Anspach v. Anspach*, 557 S.W.2d 3 (Mo.App.1977). It is possible, however, that all of a spouse's retirement benefits would not be marital property, e. g., any portion of rights accruing after dissolution which would be separate property, as would any benefits vesting prior to a marriage. See *Ramsey v. Ramsey*, 96 Idaho 672, 535 P.2d 53 (1975); what the present value (at the time of the dissolution decree) of the plan was, if a lump sum award is feasible; whether the award shall be a percentage of the pension benefits at the time the same becomes payable (on retirement), and the nature and provisions of the retirement plan. See the various commentaries on these problems: 50 Washington L.Rev. 505, "Community Property-Deferred Compensation"; 24 Hastings L.J. 347, "Retired Pay: A Divorce in Time Saved Mine"; 44 Texas L.Rev. 860, "Community Property Aspects of Profit-Sharing and Pension Plans in Texas"; 42 Missouri L.Rev. 143, "Domestic Relations—Husband's 'Vested' Interest in Retirement Plan is Divisible as Marital Property."

█ A theory that the trial court undertook a "modification" of that part of the judgment awarding marital property could not be here applied because of the express provision of § 452.360(2) RSMo 1978, "The court's order as it affects distribution of marital property shall be a final order not subject to modification."

Appellant was originally (November 20, 1975) awarded $750.00 per month as maintenance, and the trial court, upon respondent's motion to modify it, reduced it to $300.00 per month upon a finding that respondent's medical condition caused him to be unable adequately to perform his gainful employment, and that he was indebted for medical bills, and was left indebted because of debts incurred by appellant during the marriage and prior to its dissolution. Under § 452.370(1), RSMo 1978, a maintenance award may be modified "only upon a showing of changed circumstances so substantial and continuing as to make the terms unreasonable."

■ At the time of the dissolution, respondent was netting $2,300.00 per month, which consisted of his salary with FAA, a 10% disability payment from the Army, and an Army retirement pension. He began dialysis treatment for renal difficulties in April, 1976, and in January, 1977, he received a kidney transplant. During the time he was receiving the dialysis treatment, his second wife, Paulette, quit her job to assist him in the treatment program. He convalesced after the transplant until May 2, 1977, when he returned to work. He was hospitalized briefly in January, 1978, with a viral infection from which he suffered no aftereffects, but he continued under a doctor's care for supervision of the transplant.

Respondent's income, as of August 10, 1978, was $3,500.00 per month net, including FAA salary and military payments. In 1976, his gross income was $28,500.00, and was $30,000.00 in 1977, the years during which he underwent dialysis treatments and received his kidney transplant. He testified to several pay periods in which he did not receive full salary because of being off from work, and he owed his employer 200 sick leave hours. The dialysis treatment was covered by insurance, he having Blue Cross-Blue Shield through his employer, and the Army's Champis fund. He had not submitted medical bills to Champis, and he qualified for Medicare which pays for his medicines—he having been $300.00 to $400.00 out-of-pocket for prescriptions and shots.

At the time of the hearing on the motion, respondent was on a wage earner plan in the Federal District Court for Western Missouri, under which he was paying the trustee $1,400.00 per month. Apparently, and according to the copy of the court order attached to appellant's motion to stay these proceedings, which motion was overruled, preferred monthly payments were to be made, and unsecured creditors were to be paid 30% of their claims. Respondent testified further that his trips out of town were restricted because of his thrice weekly dialysis treatments, but he did take a family vacation in Hawaii in August, 1977, while he was having financial difficulties. At-

tached to his motion is a statement of monthly expenditures and debt balances showing two medical bills, $47.75 and $25.63. Respondent still had his position with FAA, and he acknowledged that his physical condition had improved, although he did not consider himself healthy. There was no showing that appellant's circumstances had changed since the dissolution.

Respondent has not sustained his burden of proof on the allegations of his motion, as he must. *Langwell v. Langwell*, 559 S.W.2d 65, 66[1] (Mo.App.1977); *Plattner v. Plattner*, 567 S.W.2d 139 (Mo.App.1978). Respondent's health had improved since the dissolution, and even if the evidence showed he was at the time of this hearing seriously ill, which it does not, that fact, standing alone, would not be a sufficient condition to justify reducing the maintenance award. *Altenbach v. Altenbach*, 162 S.W.2d 361, 362[1–4] (Mo.App.1942), in which case the evidence showed that a reduction in income was occasioned by the divorced husband's ill health. Here, the evidence shows that respondent was earning about $1,200.00 more per month than he was at the time of the decree of dissolution. His medical bills have been paid for by insurance, with the exception of $300.00 to $400.00. He showed only two medical bills unpaid, and he had not tapped Medicare and Champis for payment of these expenses. The judgment reducing maintenance to appellant is not supported by substantial evidence.

That part of the judgment declaring the decree as to division of property is reversed and the case is remanded for further proceedings in connection therewith. That part of the judgment reducing the award of maintenance to appellant is reversed.

All concur.