See also 721 S.W.2d 165.

The FIRST NATIONAL BANK OF
CARROLLTON, Missouri,
Respondent,

v.

Margie E. EUCALYPTUS, Appellant.

No. WD 39813.

Missouri Court of Appeals,
Western District.

June 14, 1988.

Fred L. Slough, Kay Madden, Slough, Connealy & Irwin, Kansas City, for appellant.

Michael W. Bradley, Carrollton, for respondent.

Before MANFORD, J., Presiding, and TURNAGE and COVINGTON, JJ.

COVINGTON, Judge.

Margie E. Eucalyptus appeals the trial court's order of partition and order confirming the partition sale. She also appeals from the trial court's denial of her claim for an accounting. The judgment is affirmed in part and reversed in part.

The subject property was purchased in 1966 by Ms. Eucalyptus and her then-husband Gene McFadden and another couple, Lloyd and Dorothy Hane. Each couple owned an undivided one-half interest. In 1970, Ms. Eucalyptus and her husband dissolved their marriage. Pursuant to the terms of their separation agreement, Ms. Eucalyptus and Mr. McFadden each received one-half of an undivided one-half interest in the property. The separation agreement provided that each party would hold an undivided one-fourth interest in the real property as tenants in common and further provided that Gene McFadden was entitled to any of the rents, profits, and ASCS payments derived from the property. The agreement provided that, in the event the property was sold, the parties would divide equally their share of the net proceeds at the time of the sale.

Subsequent to the dissolution, Mr. McFadden acquired Mr. and Mrs. Hane's one-half interest. Mr. McFadden also satisfied the indebtedness on the property.

On June 18, 1984, Mr. McFadden and his new wife gave a note secured by a deed of trust on the subject property to The First National Bank of Carrollton. On July 2, 1985, the deed of trust was foreclosed upon and Mr. McFadden's undivided three-fourths interest was purchased at the foreclosure sale by the Bank.

The Bank subsequently filed a petition for partition seeking sale of the real estate it held as a tenant in common with Ms. Eucalyptus. The bank requested an interlocutory judgment in partition and an order of sale without appointment of commissioners.

At the hearing on the petition for partition, Orville Mann testified that he visited the property in question and that it contained many and varied uses, a very nice barn, an older home in disrepair used for migrant workers, wooded areas, apple trees, row crops, pasture land and lakes. In Mr. Mann's opinion, each item had a

different value. He acknowledged that an appraisal would provide an estimate of what each separate item would bring at a sale.

Alvin Wiley, president of the Bank, testified that he had been approached by persons who were interested in purchasing the entire property but that he knew of no interested purchaser for less than the entire parcel. He additionally testified that the land was desired by apple growers because of its high ground and soil content and that apple growers are unique in agriculture because of their prosperity and ability to purchase new land.

Ms. Eucalyptus testified that the subject property was contiguous with property that her children's grandfather had owned. She stated that she visited the property frequently over a period of twenty years and that she had done extensive work on the property. Her daughter and son-in-law lived on land which was near. She expressed a strong emotional attachment to the property and stated that the property is located in an area which has always been close to her family. She believed that there were twelve different possibilities for dividing the property in a three quarters/one quarter division.

On December 31, 1985, the court entered an interlocutory decree in partition and ordered a public sale of the land for cash with the proceeds to be apportioned between the parties according to their respective interests.

On March 27, 1987, pursuant to the circuit court's order and after proper notice, the sheriff of Lafayette County offered the real estate in question for sale at public auction. The Bank purchased the real estate for $65,000.

Having been given leave to file a counterclaim, Ms. Eucalyptus made claim for one quarter of all profits and rents which had been received by the Bank from the date the Bank acquired the property, and she requested an accounting.

On June 9, 1987, at the hearing to approve the report of sale, the Bank's senior vice president testified that $65,000 was a fair and reasonable price for the property.

John Woelk, III, and Merle Decker testified on behalf of Ms. Eucalyptus with respect to their opinions as to the value of the property being $950 to $1,050 per acre. Neither Mr. Woelk nor Mr. Decker, however, was present at the foreclosure sale, nor were they informed of the sale prior to the date of the sale.

On July 15, 1987, a second hearing was conducted during which Ms. Eucalyptus testified regarding her understanding of the terms of the separation agreement entered into in 1970. The court denied Ms. Eucalyptus' motion for an accounting and confirmed the report of sale.

Ms. Eucalyptus first alleges that the trial court erred in ordering the sale of the property because there was no evidence before the court that the value of each owner's share of property in kind would be materially less than his or her share of the money equivalent which could probably be obtained from the whole. She asserts, in essence, that there was no evidence upon which the court could base a determination that partition in kind would result in great prejudice to the owners.

In partition, a division in kind is favored unless it would result in great prejudice to the owners. *Leland Stanford Junior University v. Treat*, 170 S.W.2d 115, 117 (Mo.App.1943). Rule 96.01. The test of whether partition in kind would result in great prejudice to the owners is whether or not the value of the share of each in case of a partition would be materially less than the share of the money equivalent that each could probably obtain from the whole. *Gebauer v. Gebauer*, 165 S.W. 2d 333, 335 (Mo.App.1942).

There is substantial and competent evidence in the record from which the trial court could have found that partition in kind could not be made without great prejudice to the parties and that the real estate should be sold in partition rather than partitioned in kind. The property is diverse. It consists of two adjacent rectangles totaling approximately 99.86 acres. The smaller of the two rectangles was partially cultivated in soybeans and with apple trees.

The larger rectangle has a terraced pasture, two small ponds, and a large lake. Improvements include pasture lands, wooded areas, fences, a house in extremely poor condition, and a barn. Orville Mann, a real estate broker familiar with the land, opined that each of these items had a different value but that the property could be divided in kind if one took steps necessary to value each separate item located on the total tract. The president of the Bank, however, testified that potential purchasers had expressed interest in buying the entire property but had no interest in purchasing a portion of the property. He also significantly observed that the value of the property would vary depending upon the manner in which the various components of the property were utilized.

Although Ms. Eucalyptus is not incorrect in stating that the property could be divided in kind in many different ways, there is substantial and competent evidence in the record to support a determination that the value of the share of each in the event of partition in kind would be materially less than the share of money equivalent which each could probably obtain from the whole.

Ms. Eucalyptus also alleges that the trial court erred in confirming the sale of the real estate; she asserts that the sale price was inadequate. The land sold for approximately $650 per acre. At the hearing to approve the sale, Ms. Eucalyptus adduced evidence that the property was worth $950 to $1050 per acre. She contends that property sold at an "involuntary" sale should be first appraised and the property sold for a reasonable price within the appraised values. She cites no authority for this proposition.

■ In general, inadequacy of price is not a sufficient ground for refusing to confirm a sale in partition unless the inadequacy is such as to raise the presumption of fraud. Confirmation or rejection of a sale in partition is within the trial court's discretion. *Borchers v. Borchers*, 352 Mo. 601, 609, 179 S.W.2d 8, 12 (1944).

■ There is evidence in the record from which the trial court could have determined the sale price to be adequate. The Bank adduced evidence that the value of the property was approximately $650 per acre. Although Ms. Eucalyptus adduced evidence that the property was worth substantially more per acre than the amount for which the property sold, she had given no notice of the sale to the two witnesses who at the hearing claimed that they would have bid a higher price. "Evidence of an offer, made after a partition sale, of a price higher than that which the property brought at the sale does not in itself prove that the sales price was inadequate." *Borchers*, 179 S.W.2d at 12. In this case there was no showing that the price for which the property was sold was grossly inadequate. Moreoover, for three days prior to the sale, Ms. Eucalyptus ran a notice in the Lexington News informing potential purchasers of her intent to appeal the order to sell and the sale itself; the notice ran on the same page as the order of partition sale. Ms. Eucalyptus' actions were such that they may have had a chilling effect on the sale. The order of the trial court was not clearly erroneous.

Relying upon the separation agreement, Ms. Eucalyptus next makes claim to one-fourth of the rents and profits collected by the Bank from July 2, 1985, the date of foreclosure, until "the present." The separation agreement of June 9, 1970, provided that Mr. McFadden would be entitled to the rent, profits and ASCS payments on the property and that, in the event of sale of the property, the parties were to "divide equally their share of the equity."

■ Although the parties make no distinction, there are two periods of time pertinent to an analysis of Ms. Eucalyptus' claim: the time between foreclosure and the partition sale and the time subsequent to the Bank's purchase at the partition sale. From the date of the purchase at the partition sale, the Bank is entitled to all rents and profits. In a partition sale, the purchaser obtains equitable title and has immediate right of possession of the property. Legal title passes upon confirmation of the sale and delivery of the deed; however, during the interim period between the sale and the passing of legal title, legal title is held in trust for the purchaser. *See Whitener v. Ward*, 242 S.W. 991, 992–93 (Mo.App.1922). Upon confirmation of the partition sale, the legal title relates back to

the date of the sale, and, absent any agreement to the contrary, the purchaser is entitled to the rents and profits accruing after the date of sale. *Arnote v. Rogers,* 250 S.W. 633, 635 (Mo.App.1923). The Bank acquired equitable title to the property upon purchase at the partition sale. The Bank obtained legal title upon the court's confirmation of the sale and delivery of the deed. There was no agreement that any entity other than the Bank would collect rents and profits from and after the Bank purchased the property at the partition sale. The Bank, therefore, is entitled to rents and profits from the date of purchase at the partition sale.

The matter of entitlement to rents and profits from the date of foreclosure until the partition sale, however, is based upon principles of contract law and requires a different result. Citing the general rule that a purchaser at a foreclosure sale acquires the same rights as the mortgagor had when he gave a deed of trust, the Bank claims that it acquired the rights and title of Mr. McFadden to the rents and profits even after the date of foreclosure. The Bank, in essence, claims that Mr. McFadden's rights under the separation agreement became the Bank's rights and should continue in perpetuity.

As a general rule, courts will construe a contract to impose an obligation or right in perpetuity only when the language of the contract requires that construction. *Superior Concrete Accessories v. Kemper,* 284 S.W.2d 482, 490 (Mo.1955). The intention of the parties with respect to duration and termination of their contract is to be determined from the surrounding circumstances and from a reasonable construction of the agreement as a whole. *Union Pacific Railroad Co. v. Kansas City Transit Co.,* 401 S.W.2d 528, 534 (Mo. App.1966). The period of time during which Mr. McFadden's right to receive the income from the property should be in effect is not expressly stated in the terms of the agreement. His right to receive the income should not, therefore, be construed to continue in perpetuity unless the parties' intention with respect to duration so requires. Over the Bank's objection on the basis of the best evidence rule, Ms. Euca-

lyptus testified that she agreed to her former husband's receiving the income from the property because Mr. McFadden had agreed to be responsible for the then indebtedness on the real estate and for payment of certain amounts for the higher education of the parties' children. At the time of the hearing in this matter, the original indebtedness on the property had long been satisfied and the youngest of the McFadden children was thirty years of age. The earliest possible time at which Mr. McFadden's rights could reasonably have terminated under the surrounding circumstances would have been, as between the parties to the contract, the time at which Mr. McFadden had satisfied the responsibilities which formed, in part, the basis for the parties' agreement. Moreover, through construction of the agreement itself, it is apparent that the rights of Mr. McFadden should reasonably continue, at the outside, until a sale of the property might take place. Under either analysis, Ms. Eucalyptus would be entitled to an accounting for rents and profits collected by the Bank from the date of foreclosure until the date of the partition sale and would be entitled to one-fourth of the net income therefrom.

The orders of the trial court which ordered the partition sale and confirmed the sale are affirmed. The order of the trial court denying an accounting is affirmed with respect to the period of time commencing with the Bank's purchase at the partition sale. With respect to the period of time commencing with the Bank's purchase of Mr. McFadden's interest at the foreclosure sale and terminating with the purchase at the partition sale, the trial court's order denying an accounting is reversed; the cause is remanded for an accounting and for disposition of the net income from the property during that period in a manner proportionate to the respective interests of the parties.

All concur.