**Mary Dean THOMAS, Plaintiff–Respondent,**

v.

**Eubert Gayle LLOYD, Jr., Defendant–Appellant,**

**Richard H. Hoffman and Carolyn Hoffman, Defendants.**

No. 22733.

Missouri Court of Appeals, Southern District, Division One.

May 16, 2000.

1. 19 CSR 25–30.051; *Blechle,* at 658.

annul the parties' purported marriage, impose a constructive trust on real estate, quiet title to real estate, partition real estate, award damages for fraud, order an accounting, enter an order of replevin, and award damages for assault and battery. Via counterclaim, Defendant sought dissolution of a partnership and an accounting, damages based on a fraud theory, damages for malicious prosecution, and damages for assault and battery.

The trial court found that the subject real estate could not be partitioned in kind, ordered the same sold at public auction, and ordered the net sale proceeds to be distributed in the following ratios: Ninety-eight percent to Plaintiff and two percent to Defendant. After it adjudged the parties' cattle business was a partnership, the court dissolved the partnership, directed that certain partnership assets be sold at public auction, ordered the net sale proceeds to be dispersed in the ratio of sixty-six percent to Plaintiff and thirty-four percent to Defendant, and ordered in-kind division of other partnership personal property. The court denied all other relief sought by the parties and entered judgment "against them respectively on their prayers." Defendant appeals. Richard and Carolyn Hoffman were defendants because they held a deed of trust on the real estate that was the subject of the partition count. They have not appealed.

We affirm.

### FACTS

Plaintiff's husband of thirty years died in February 1988. In February 1989, Plaintiff met Defendant in Mobile, Alabama, while traveling. Their chance meeting quickly blossomed into a romantic relationship. When Plaintiff returned to her home in Maryland in late February 1989, Defendant accompanied her and they began living together.

Initially, Defendant told Plaintiff he worked for a major oil company, had been outside the country for the past three

Brian L. Harvell, St. Louis, for appellant.

Timothy M. Evans, Cuba, for respondent.

KENNETH W. SHRUM, Judge.

The disintegration of the romantic and business relationship between Mary Dean Thomas (Plaintiff) and Eubert Gayle Lloyd, Jr., (Defendant) led to this suit. In her petition, Plaintiff asked the court to

years, was independently wealthy, and was not married. As Plaintiff later learned, none of these statements was true. In truth, Defendant had recently been released from prison. He had multiple criminal convictions, including convictions for counterfeiting and stealing. Further, Defendant's assets at the time were no more than $2,000, and he was legally married to Patricia Lloyd.

Evidence as to when Plaintiff learned of Defendant's deceptions was contradictory. The trial court found that Plaintiff first learned of Defendant's criminal history and lack of wealth soon after she returned to Maryland in February 1989. It found that Plaintiff discovered Defendant was not single "soon after her void marriage to Defendant." The parties' "void marriage" occurred July 10, 1989, in Canada.

Except for occasional vacations, Plaintiff and Defendant resided in Plaintiff's home in Maryland from late February 1989 through October 1990. During that period, Defendant made repairs and renovations to Plaintiff's house. In October 1990, Plaintiff sold her Maryland home in an "owner-finance" arrangement.

The parties then moved to Missouri. After looking at several farm properties, they bought a 600–acre farm in Crawford County, Missouri, for $150,000. The deed was dated March 8, 1991. The grantees named in the deed and the type of tenancy created were as follows: Plaintiff, a single person, and Defendant, a single person, as joint tenants with right of survivorship. The $150,000 purchase price was paid as follows: $100,000 cash downpayment and a $50,000 purchase money note that called for 120 monthly installments of $633.38.

After buying the farm, Plaintiff and Defendant bought cattle and farm machinery, then began operating a cattle business on the property. The parties also made improvements to the farm, including remodeling an old farm house in which they lived. In June 1992, they began construction on a 4,200 square-foot house. Later, the house was expanded to 6,500 square feet. By the time of trial, Plaintiff's expenditures for labor and materials on the home exceeded $201,000.

A progressive deterioration in the parties' relationship led to the filing of this multiple-count lawsuit in October 1995. After entry of the judgment outlined above, Defendant appealed.

## STANDARD OF REVIEW

Our standard of review in this court-tried case is explained in *Murphy v. Carron*, 536 S.W.2d 30 (Mo.banc 1976). The decision of the trial court will be affirmed on appeal unless no substantial evidence supports it, it is against the weight of the evidence, it erroneously declares the law, or it erroneously applies the law. *Id.* at 32[1]. The power to set aside a trial court's judgment on the ground that it is against the weight of the evidence will be exercised with caution and only when the reviewing court has a firm belief that the decree or judgment is wrong. *Searcy v. Seedorff*, 8 S.W.3d 113, 116[2] (Mo.banc 1999). "In reviewing a contention that the evidence is insufficient, the evidence is viewed in the light most favorable to the verdict, and deference is accorded to the trial court's assessment of credibility." *Id.* at 116[3].

## DISCUSSION AND DECISION

*Point VII: Failure to Include Real Estate as Partnership Asset*

We first consider Defendant's seventh point relied on, in which Defendant charges the trial court with reversible error for not classifying the farm real estate as a partnership asset. Defendant claims he was prejudiced by such error because if the farm was properly classified as partnership property, any proceeds (after proper offsets) from a sale thereof would be divided in accordance with the partners' interests. He insists that exclusion of the real estate from the partnership assets is

"clearly not supported by the evidence." We disagree.

 "The true method of determining whether, as between partners themselves, land standing in the names of individuals is to be treated as partnership property is to ascertain from the conduct of the parties and their course of dealing, the understanding and intention of the partners themselves, which, when ascertained, unquestionably should control." *State Auto. and Cas. v. Johnson*, 766 S.W.2d 113, 122[5] (Mo.App.1989); *Hudson v. French*, 211 Mo.App. 175, 241 S.W. 443, 446[5] (1922). Whether real estate titled in the names of individual partners is partnership property is a question of fact and the burden of proof is on the one alleging that the ownership does not accord with the legal title. 68 C.J.S. *Partnership* § 75, at 277 (1998).

 In attempting to demonstrate that the parties intended for the real estate to be a partnership asset, Defendant points to the joint ownership of the farm and the fact that the parties operated the partnership cattle business on the farm as evidence that the two understood and intended for the farm to be a partnership asset. His reliance on those facts is misplaced, however. A joint purchase of real estate by two individuals does not, in and of itself, prove the land is a partnership asset. *See Hudson*, 241 S.W. at 446; 68 C.J.S. *Partnership* § 73, at 274–75 (1998). On the contrary, when land is conveyed to partnership members without any statement in the deed that the grantees hold the land as property of the firm, there is a presumption that title is in the individual grantees. 68 C.J.S. *Partnership* § 75, at 277 (1998). Moreover, "[e]vidence that the land is used by the firm is of itself insufficient to rebut the presumption." *Id.* The mere use of land by a partnership does little to show the land is owned by the partnership. 1 BROMBERG AND RIBSTEIN ON PARTNERSHIP, § 3.02(b), at 3:7 (Release No. 7—1999–2 Supp.). Standing alone, evidence of partnership usage does not com-

pel a finding that the land is a partnership asset. *Mischke v. Mischke*, 247 Neb. 752, 530 N.W.2d 235, 240 (1995); *In re Estate of Schreiber*, 227 N.W.2d 917, 925[9] (Wis. Sup.1975). *See Shawneetown Feed and Seed Co. v. Ford*, 468 S.W.2d 54, 56 (Mo. App.1971).

Defendant points to evidence that some real estate taxes and promissory note payments for the farm came from partnership funds. He argues such evidence indicates the parties intended the farm to be a partnership asset. We agree that such evidence is a factor to be considered, but it is not determinative of the issue, especially, when, as here, the partnership payment evidence is viewed in context. For instance, none of the $100,000 downpayment for the farm came from partnership funds. Instead, it all came from Plaintiff's separate funds. Plaintiff was never reimbursed by either the partnership or Defendant for her downpayment. Of eighty-four monthly farm note payments, only three were paid from the parties' joint account. Seventy-seven of the monthly farm note payments, a total of $48,770.26, were paid from Plaintiff's separate funds. Plaintiff also spent $201,927.87 of her separate money to build a new house on the farm. None of the house construction costs came from partnership funds. Of the seven years' worth of state and county real estate taxes that had been paid on the farm property, only one year was paid out of partnership funds. On the whole, the evidence is that Plaintiff invested over $350,000 of her own funds in this farm while less than $2,400 of partnership funds were used to pay the farm note and real estate taxes. Such minimal partnership expenditures is more indicative of the tendency of people—particularly in family or quasi-family businesses—to intermingle personal and partnership affairs, than it is an indication of the parties' intent to include the farm as a partnership asset. *See* 1 BROMBERG AND RIBSTEIN ON PARTNERSHIP, § 3.02(b), at 3:6 (Release No. 7—1999–2 Supp.).

■ · Other evidence from which the parties' intent can be gleaned includes the following: (A) Plaintiff and Defendant signed as individuals on the $50,000 purchase money note and deed of trust securing the same, without a recital of partnership status; (B) neither party filed a partnership income tax return; (C) Plaintiff filed income tax returns as an individual; (D) Defendant never filed an income tax return after the farm was purchased; (E) Plaintiff wrote checks on her individual account for materials and labor for farm improvements; and (F) Plaintiff repeatedly testified she never intended nor agreed to a partnership with Defendant. We find these circumstances sufficient to support the implicit finding and judgment of the trial court that a partnership agreement did not exist regarding the land and it was not a partnership asset. The trial court did not commit reversible error when it failed to include the farm as a partnership asset. Point VII is denied.

### Point III: Failure to Give Credit to Defendant for Improving Farm

■ Defendant's third point urges reversal because the trial court ordered the farm sold pursuant to Plaintiff's request for partition without giving Defendant credit for his "contributions of time and labor expended on improvements to" said real estate. In support, Defendant cites, *inter alia*, this excerpt from *Hartog v. Siegler*, 615 S.W.2d 632 (Mo.App.1981).

> "[W]e undertake our review of this decree by taking cognizance of the rule of law that a tenant in common's right to contribution from his co-tenant may extend to payments made for repair and improvements, taxes and other expenses, depending upon the nature and circumstances of the particular expenditures. Upon partition, advances for repairs made in good faith for the substantial benefit of all co-tenants, may be allowed. Decisions of Missouri Appellate Courts hold that a co-tenant in possession may be compensated in equity

> for improvements to co-tenancy property where he has a good faith belief that he has full title to the property ... or where the other co-tenants expressly or impliedly consent to the improvements." *Id.* at 636 (citations omitted).

Defendant points to his testimony that his time, labor, and services for the period 1991 through 1994 were worth at least $35,000 per year. Based on that evidence and the principles set out in *Hartog*, Defendant argues the court was required, as a matter of law, to consider his "in-kind" contribution of $140,000 along with his other capital contributions in determining his interest in the real estate. Defendant asserts that "[b]y failing to calculate the party's [sic] relative interests appropriately, the trial court's judgment is not supported by the facts and misapplies the law." Defendant's argument fails, however, because of an evidentiary deficiency.

■ Defendant presented evidence about the value of his time and labor contribution on an "all or nothing basis;" that is, he valued his time and labor at $35,000 per year for his collective efforts (including buying cattle, caring for and managing the cattle herd, doing routine maintenance on the farm, and improving the farm through construction projects). However, Defendant's claim for time and labor contributions in buying and managing the cattle herd are not chargeable as liens against the real estate or against the funds received from its sale. *See Richardson v. Kuhlmyer*, 250 S.W.2d 355, 360[4] (Mo. 1952). This follows because we have already rejected Defendant's claim that the farm real estate was a partnership asset. Consequently, Defendant's claim for time and labor expended on the cattle operation is not connected with the common property, i.e., it is not a claim for effort expended to preserve or improve the farm. *Id.* at 360. Although a trial court is accorded wide latitude in adjusting equities and claims among parties to a partition suit, "[t]he equities to be adjusted ... must of necessity be those which have arisen from

or are in some way connected with the real estate to be partitioned; they must be claims relating to the common property." *Id.* at 360[5]; *Grunden v. Nelson*, 793 S.W.2d 569, 574[4] (Mo.App.1990).

Defendant adduced no separate evidence on the value of his time and labor contribution to the common property, i.e., the farm real estate. Because Defendant's only evidence regarding value included sums for labor unrelated to real estate, it lacked the requisite foundational basis from which the court could separately evaluate his claims relating to that property. *See State v. Vorhof–Duenke Co.*, 366 S.W.2d 329, 340 (Mo.banc 1963). Since Defendant did not meet his evidentiary burden on this issue, the trial court did not commit reversible error when it failed to credit Defendant for his time and labor in improving the farm. Point III is denied.

*Point I: Equal Land Division via Gift or Equitable Estoppel*

Where an appellate court is asked to review the decision of a trial court, procedural rules require that an appellant's brief contain points relied on. Rule 84.04(a)(4). Each point relied on "shall ... identify the trial court ruling or action that the appellant challenges[.]" Rule 84.04(d)(1)(A). *See In re Marriage of Du-Bois*, 875 S.W.2d 223, 226[1] (Mo.App. 1994). In his first point, Defendant describes the ruling that he challenges as follows:

"WHETHER THE TRIAL COURT ERRED IN ENTERING ITS FINDING AND JUDGMENT THAT [DEFENDANT'S] *CONTRIBUTION OF LABOR TOWARD IMPROVEMENTS TO CERTAIN REAL ESTATE IN CRAWFORD COUNTY WERE PROVIDED AS A GIFT IN THE CONTEXT OF A QUASI–MARITAL RELATIONSHIP,* BUT NOT DIVIDING SAID REAL ESTATE, WITH IMPROVEMENTS, IN THE SAME CONTEXT, BECAUSE THE JUDGMENT IS AGAINST THE WEIGHT OF THE EVIDENCE AND MISAPPLIED THE LAW, IN THAT [DEFENDANT] AND [PLAINTIFF] HELD THEMSELVES OUT TO BE HUSBAND AND WIFE AND ACCUMULATED PROPERTY JOINTLY TITLED WITH RIGHT OF SURVIVORSHIP, AS SINGLE PEOPLE, EVIDENCING DONATIVE INTENT WITHIN SAID SPECIAL RELATIONSHIP, AND THUS THE COURT SHOULD HAVE ESTOPPED [PLAINTIFF] FROM CLAIMING A GREATER INTEREST IN SAID REAL ESTATE THAN [DEFENDANT]." (Emphasis added.)

Defendant's point and his argument in support mischaracterize the record. The trial court did not make the finding italicized above, and such a finding does not inexorably follow from any fact findings that were made.[1] Nor does such conclusion or finding follow as an inevitable consequence of the court's failure to credit Defendant for time and labor he spent improving the farm.

By mischaracterizing the trial court's findings, Defendant is essentially asking us to convict the trial court of an error it did not commit. This we will not do. *See Greene County v. Pennel*, 992 S.W.2d 258, 261 (Mo.App.1999). In reviewing a court-tried case, "the trial court judgment is presumed valid," and the bur-

---

1. The following is a summary of the trial court findings that form the basis for what Defendant, in Point I, casts as a trial court finding:

(1) Defendant's work on Plaintiff's Maryland home was a gift from Defendant to Plaintiff as evidenced by his testimony he neither asked for nor expected pay for that work;

(2) Plaintiff and Defendant had no written contract for payment of his services as general contractor for the Crawford county farm home, "other than the joint tenancy of the real estate[;]" and

(3) Defendant did not plead a claim in quantum meruit regarding the farm real estate, "but rather fraudulent inducement to enter into a partnership, which the Court finds no fraud."

den is on the appellant to show the incorrectness of the judgment. *Delaney v. Gibson,* 639 S.W.2d 601, 604[4] (Mo.banc 1982). Defendant does not carry this burden by mischaracterizing the trial court's findings and relying on such mischaracterizations as a basis for arguing reversible error.

▮▮▮▮▮ Defendant's first point also urges reversal on theories never presented to the trial court. First, Defendant argues the trial court should have divided the real estate as if it were marital property. In support, Defendant asserts the trial court should have applied equitable estoppel principles to preclude Plaintiff from escaping the consequences of holding herself out as a married person. However, neither party pled nor advanced equitable estoppel as a theory at trial. Second, Defendant argues the trial court should have divided the real estate equally because Plaintiff gifted an interest therein to him. However, Defendant neither pled inter vivos gift as a theory of recovery nor advanced that theory at trial. Defendant pled and proceeded at trial on the theory the parties formed a partnership and all assets (including the farm) belonged to the partnership. Appellate courts will not, on review, convict a trial court of error on issues that were not put before it to decide. *State ex rel. Mayberry v. City of Rolla,* 970 S.W.2d 901, 908[5] (Mo.App.1998). Issues raised for the first time on appeal are not preserved for review. *Seitz v. Lemay Bank and Trust Co.,* 959 S.W.2d 458, 462[8] (Mo. banc 1998).

Point I is denied.

*Point II: Defendant's Alleged Contribution to Farm Purchase Price*

▮▮▮ Defendant's second point claims reversible error resulted from the trial court's finding Defendant contributed nothing toward the purchase price of the farm. Specifically, Defendant claims he "transferred $25,000 of his separate capital to [Plaintiff] in anticipation of the purchase of said real estate[,]" and by failing to account for his contribution, the court mis-applied the law and rendered a judgment unsupported by evidence.

▮▮▮ In a partition suit involving the division of real estate titled in the names of persons living in a meretricious relationship, the division is ordinarily based on the respective contributions of each grantee to the purchase price and improvements. *Anderson v. Stacker,* 317 S.W.2d 417, 421[3] (Mo.Sup.1958); *Bass v. Rounds,* 811 S.W.2d 775, 780[14] (Mo.App.1991). The parties agree this is a correct statement of the law, but differ about the applicable facts.

In his counterclaim, Defendant conceded Plaintiff paid the $100,000 downpayment on the farm, and the remainder of the purchase price of $50,000 was paid via a purchase money note given to the sellers. Regarding the source of the downpayment, Plaintiff testified she raised all of it by selling mutual funds and tax-free funds from her separate property. These securities were sold in January 1991. Plaintiff produced documents to support her testimony. These included (a) checks received from the sale of her individually-owned mutual funds, (b) a statement from the mutual fund company verifying the sale, (c) statements from her credit union account where she deposited the proceeds from the sale of mutual funds, and (d) a receipt from the law firm that handled the farm real estate closing showing Plaintiff had paid the $100,000 downpayment.

Evidence relating to Defendant's claim that he made a $25,000 contribution to the farm purchase price included the following: In August and October of 1989, Plaintiff transferred $25,000 to Defendant while the parties lived in Plaintiff's Maryland home. Defendant put the money in his separate single-name account. He characterized this as a $25,000 gift, stating they never "discussed" he would have to pay it back. Plaintiff testified otherwise by asserting she merely loaned the $25,000 to Defendant and always expected repayment. The $25,000 was returned to Plaintiff in

October 1990 because she needed it to "close" the sale on her Maryland house.[2] Plaintiff testified Defendant's return of the money was merely repaying "what he owed me." Defendant testified differently, stating: "I told her . . . I'd give it back—it could go toward whatever place we bought in the future." Defendant also testified that as they talked about the $25,000, Plaintiff said: "[W]ell, if we go to Missouri and buy a place out there, you can consider that as part of the down payment."

■■■ Issues such as credibility of witnesses, weight of evidence, and resolution of conflicts in testimony are for the trial court to resolve and are not matters that appellate courts can review. *Choate v. Natvig,* 952 S.W.2d 730[15] (Mo.App. 1997). A trial court is free to believe none, part, or all of a witness's testimony. *Dukes v. Dukes,* 859 S.W.2d 264[4] (Mo. App.1993). A trial court may disbelieve testimony even when it is uncontradicted. *Matter of T.A.P.,* 953 S.W.2d 638, 642[8] (Mo.App.1997). A reviewing court's deference to a trial court's resolution of credibility is not limited to the issue of witness credibility, but also to conclusions of the trial court. *Kitchens v. Missouri Pacific R.R. Co.,* 737 S.W.2d 219, 222 (Mo.App. 1987). The trial court obviously believed Plaintiff and disbelieved Defendant regarding the $25,000 contribution claim. That was its prerogative. When we take as true all the evidence in this record favorable to the trial court's finding, there is sufficient evidence to support the trial court's implicit finding Defendant did not contribute $25,000 to the purchase price of the farm. Point II is denied.

*Point V: Alleged Error in Ordering Sale of Land*

■■■ Defendant's fifth point urges reversal of that part of the judgment which ordered the real estate sold. Defendant asserts the trial court erred by ordering the farm sold without an explicit finding that partition in kind cannot be made without great prejudice to the owners.

■■■ A trial court may order a sale in partition without appointing commissioners where partition in kind cannot be made without great prejudice to the parties in interest. *Heald v. Erganian,* 377 S.W.2d 431, 443[12] (Mo.1964). *See* § 528.030; Rule 96.11. "In partition, division in kind is favored unless it would result in great prejudice to the owners." *Von Behren v. Oberg,* 902 S.W.2d 338, 340[1] (Mo.App.1995).

■■■ Defendant correctly notes the trial court ordered the land sold without expressly making a finding the parties would be "greatly prejudiced." However, judgments are to be construed with reference to the record as a whole, including the pleadings. *Tracy v. Tracy,* 961 S.W.2d 855, 865[23] (Mo.App.1998); *Margolin v. Margolin,* 796 S.W.2d 38, 47[9] (Mo.App. 1990); *Massey v. Massey,* 594 S.W.2d 296, 298 (Mo.App.1979). Here, Plaintiff's second amended petition asked the trial court "to find that partition in kind of said real estate, cannot be made without great prejudice to the owners [and] . . . order said real estate sold." In its findings, the trial court concluded "[t]he real estate . . . is not capable of dividing fairly" and "because the real estate . . . is not capable of division in accordance with the contributions of the parties . . . *it should be sold in accordance with Plaintiff's claim in partition.*" (Emphasis supplied.) This is an obvious reference and response by the court to Plaintiff's pleading request to sell the land because partition in kind would greatly prejudice both parties. When read in context the judgment contains a sufficient, albeit implicit, finding of "great prejudice." *See Sears v. Norman,* 543 S.W.2d 300, 304 (Mo.App.1976) (holding a judgment without legal description was nevertheless sufficient as it did recite that judgment was granted "in accordance with the

---

**2.** To sell her Maryland home, Plaintiff agreed to "owner-finance" part of the purchase price. Accordingly, she had to satisfy her home loan in order to conclude the sale.

prayer of the petition" which did describe the claimed alleyway). We reject Defendant's argument to the contrary.

■ In this point, Defendant makes the additional claim that the judgment is against the weight of the evidence because the court "failed to set forth a sufficient basis for its conclusion that [the real estate] is not capable of division." Even charitably read as a claim that insufficient evidence exists to order the land sold, the argument made in support thereof is strikingly sparse. The only mention of a "sufficiency of evidence" issue in the argument part of the brief is the following:

> "There is no mention that an in-kind partition would greatly prejudice the owners, *nor any basis in fact for making such a finding. In fact, [Plaintiff's] own testimony acknowledges that partition in kind might be possible.*"

■ "An appellant must develop the contention raised in the point relied on in the argument section of the brief." *Luft v. Schoenhoff,* 935 S.W.2d 685, 687[5] (Mo.App.1996). "Arguments raised in the point relied on which are not supported by argument in the argument portion of the brief are deemed abandoned and present nothing for appellate review." *Id.* at 687[4]. This court does not view the excerpt above as sufficient "development" of or "support" for the contention that the evidence was insufficient to support a finding of "great prejudice" if division in kind was ordered. We, therefore, deem that issue abandoned. Point VII is denied.

*Point VI: Alleged Failure to Undertake "Proper Accounting"*

■ In Point VI, Defendant asserts the trial court misapplied the law and that its judgment was "against the weight of the evidence" because the court "apparently attempted to account for the relative partnership interests without the benefit of a second trial." Defendant contends once the trial court found the cattle business partnership existed, what must inexorably

follow is he is entitled to an "accounting" per § 358.220, RSMo 1994. He argues, however, his request for an accounting should have been tried in two stages, i.e., first, a trial to determine whether an accounting was required and, second, a trial at which the accounting would be conducted. As authority for this notion, Defendant cites *McCord v. Sisco,* 897 S.W.2d 194, 197 (Mo.App.1995) (holding that an accounting suit is tried in two stages).

■ The use of a two-stage trial in an "accounting" lawsuit is "a rule of practice developed by the courts to spare a defendant the trouble and expense of preparing unnecessarily for and then trying an accounting which may or may not be ordered." *State ex rel. Rowlett v. Wilson,* 574 S.W.2d 376, 378 (Mo.banc 1978). *See Larson v. Crescent Planing Mill Co.,* 218 S.W.2d 814, 822 (Mo.App.1949).

To state the purpose for the rule explains its inapplicability here. Defendant is the one who alleged the existence of a partnership and sought an accounting from Plaintiff. Consequently, Plaintiff is the one entitled to the protection afforded by this "rule of practice." However, Plaintiff has not complained—either at trial or on appeal—about the trouble and expense of preparing for an accounting before her liability to account had first been judicially established.

Moreover, the trial court's action was consistent with the position taken by Defendant at trial. Defendant presented evidence regarding his claim for an accounting and then urged the court to decide all issues in the case. For instance, during closing remarks, Defendant's lawyer recommended to the court it "not grant the constructive trust [as urged by Plaintiff], that it divide the assets, ... and *grant relief as pled in our counter-claim and submitted to the Court.*" (Emphasis added.)

■ Whatever the merits of Defendant's argument concerning a bifurcated trial, the procedure followed here was that

urged by Defendant. A party cannot complain on appeal about an alleged error created by his or her own conduct or in which such party joined or acquiesced at trial. *In re Marriage of Gardner*, 973 S.W.2d 116, 126[8] (Mo.App.1998); *In Interest of R.M.M.*, 902 S.W.2d 355, 358[4] (Mo.App.1995). Point VI is denied.

*Points IV: Unpreserved Claim of Trial Court Error*

■■■ Each point relied on in an appellant's brief shall "(A) identify the trial court ruling or action that the appellant challenges; (B) state concisely the legal reasons for the appellant's claim of reversible error; and (c) explain in summary fashion why, in the context of the case, those legal reasons support the claim of reversible error." Rule 84.04(d)(1). "The requirements of Rule 84.04(d) are mandatory." *Carroll v. AAA Bail Bonds*, 6 S.W.3d 215, 217[7] (Mo.App.1999).

■■■ Defendant's fourth point states:

"WHETHER THE TRIAL COURT ERRED IN ENTERING ITS FINDING AND JUDGMENT DETERMINING, VALUING, AND ACCOUNTING OF [DEFENDANT'S] INTEREST IN [THE SUBJECT FARM] BECAUSE SAID FINDING AND JUDGMENT IS AGAINST THE WEIGHT OF THE EVIDENCE AND MISSTATES AND MISAPPLIES THE LAW, IN THAT THE COURT FAILED TO PROPERLY APPORTION [DEFENDANT'S] INTEREST IN SAID REAL ESTATE TITLED JOINTLY, WITH RIGHT OF SURVIVORSHIP, AS SINGLE PEOPLE."

This point does not comply with Rule 84.04(d)(1)(C), i.e., it does not "explain why the legal reasons, *in the context of the case*, support the claim of reversible error." As framed, the point is little more than an abstract statement of law, and "[a]bstract statements of law, standing alone, do not comply with this rule." Rule 84.04(d)(4). *See Carroll*, 6 S.W.3d at 218.

Additionally, framing a point in terms of "whether" an action is error is not a proper briefing practice. *Chancellor Development Co. v. Brand*, 896 S.W.2d 672, 674[2] (Mo.App.1995).

■■■ With exceptions not relevant here, "failure to substantially comply with Rule 84.04 preserves nothing for appellate review." *Libberton v. Phillips*, 995 S.W.2d 66, 67[4] (Mo.App.1999). Allegations of error not properly briefed "shall not be considered in any civil appeal." Rule 84.13(a).

Under the circumstances, we are left to look at the argument part of the brief to determine if there was plain error which would permit relief under Rule 84.13(c). *Brown v. Mercantile Bank of Poplar Bluff*, 820 S.W.2d 327, 339 (Mo.App.1991). Here, we find no manifest injustice or miscarriage of justice has occurred. Defendant's argument under this point is based on claims earlier rejected, i.e., his alleged $140,000 contribution in the form of his labor and his purported $25,000 contribution to the purchase price. Accordingly, relief under the plain error doctrine is not an option under Defendant's fourth point.

*Point VIII: Unpreserved Claim of Error*

We reproduce Defendant's eighth point as follows:

"WHETHER THE TRIAL COURT ERRED IN ENTERING ITS FINDING AND JUDGMENT REGARDING [DEFENDANT'S] CAPITAL CONTRIBUTIONS TO THE PARTNERSHIP, BECAUSE THE FINDING AND JUDGMENT IS AGAINST THE WEIGHT OF THE EVIDENCE, IN THAT [DEFENDANT] DEPOSITED SEPARATE FUNDS INTO THE PARTNERSHIP ACCOUNT FOR THE BENEFIT OF THE CATTLE OPERATION AND [PLAINTIFF] AS COPARTNER, BUT WAS NOT ATTRIBUTED THE CREDIT IN THE TRIAL COURT'S DETERMINATION OF THE PARTY'S [sic] RELATIVE

**190**

INTERESTS IN THE PARTNER-SHIP."

Defendant's entire argument on this point reads:

"[Plaintiff] paid $38,000.00 of her separate money to [Defendant], for "ranch management" services he rendered on a full time basis, which he deposited into the partnership account for the benefit of the cattle operation. The trial court determined and fixed the parties' relative interests in the partnership assets based on their respective capital outlays, and traced [Plaintiff's] expenditures, but failed to attribute [Defendant] with his capital outlay of $38,000.00." (Citations to the record omitted.)

Contrary to Defendant's assertion, the trial court *did not fail to credit* him with his capital outlay of $38,000. The court *specifically found* "Plaintiff paid . . . Defendant $38,000 . . . for ranch management and Defendant deposited those funds into the joint ranch account." Also, the court *found* "Defendant provided the partnership his 'farm management' wages and labor." At the same time, however, the trial court found "Plaintiff provided the majority of the cash capital for the partnership account" and "the appropriate ratio for return on investment is . . . 66% for Plaintiff and 34% for Defendant."

Other than mischaracterizing the court's findings, Defendant advances no argument as to how the trial court erred in finding that "66% for Plaintiff and 34% for Defendant" was the "appropriate ratio for return on investment." Once more, Defendant has mischaracterized the trial court's findings and reasoning in an apparent effort to have us convict the trial court of an error it did not commit. As noted earlier, this we will not do. *See Pennel,* 992 S.W.2d at 261. The trial court's judgment is presumed valid, and Defendant bears the burden of demonstrating the judgment is in-

correct. *See Delaney,* 639 S.W.2d at 604[4]. As stated above, Defendant does not meet this burden by mischaracterizing the trial court's findings and relying on such mischaracterizations as a basis for a finding of reversible error.

Furthermore, we note Defendant's failure to develop any argument other than that based on mischaracterizations of the court's findings suggests the trial court was correct in its analysis. *Tri-State Motor Transit Co. v. Holt,* 921 S.W.2d 652, 656 (Mo.App.1996) Any attempt by this court to analyze the record to see if the trial court correctly apportioned the partnership capital investment would be inappropriate. *Id.* This court should not and will not become an advocate for Defendant by looking for a reason to challenge the trial court's findings. *Id.* at 656[6]. Nor does Plaintiff have the burden on appeal to establish the correctness of the judgment. *Id.* at 656[7].

Even if Defendant's point and argument are liberally read as presenting the partnership capital contribution issue, Defendant does not cite case authority to support such argument nor does he explain its absence. A point of error left unsupported by citation of relevant authority need not be considered. *Tindall v. Holder,* 892 S.W.2d 314, 327[29] (Mo.App. 1994). Point VIII is denied.

The judgment of the trial court is affirmed.

CROW, P.J., concurs.

PARRISH, J., concurs.