**Carl KEEN, Appellant,**

v.

**Tommy CAMPBELL and Becky Campbell, Respondents.**

**No. 28337.**

Missouri Court of Appeals,
Southern District,
Division Two.

April 21, 2008.

Terry M. McVey, Crow, Reynolds, Shetley & McVey, LLP, Kennett, for appellant.

W. Edward Reeves, Caruthersville, for Respondent.

ROBERT S. BARNEY, Presiding Judge.

Carl Keen ("Appellant") appeals the trial court's judgment which granted his "Petition for Partition of Land," but which ordered the real estate at issue be sold at public sale as opposed to partitioned in kind as he requested.

Viewing the evidence in the light most favorable to the trial court's judgment, *Thomas v. Lloyd*, 17 S.W.3d 177, 182 (Mo. App.2000), the record reveals that on January 22, 2000, Betty Keen ("Mrs. Keen") conveyed an approximately forty-one acre tract of land ("the property") to her children: Mary Young, Barbara Williams, William Keen, Ruth McCalmon and Appellant.[1] Following Mrs. Keen's death, all of her children with the exception of Appellant, conveyed their interest in the property to Tommy Campbell ("Mr. Campbell") and Becky Campbell ("collectively Respondents").[2] As a result of the foregoing transaction, Respondents own an undivided four-fifths interest in the property, and Appellant owns an undivided one-fifth interest in the property. Appellant filed his petition for partition on December 30, 2004.

Physically the property, which is located in Pemiscot County, consists of a narrow strip of land approximately 520 feet wide and 3,400 feet long and is primarily farmland. There is a small house, about 1,000 square feet, on a one acre tract in the northwest corner of the property. The property is bordered on the north by Highway E and on the east and west by farmland already owned by Respondents, who apparently farm their property and the property at issue as if it were one farm. The parties do not dispute the fact that the northern portion of the property is more valuable as farmland than the southern portion of the property in that the southern portion of the property was once used by the government as a military airstrip.

At trial, Appellant's deposition testimony was entered into evidence. He testified his family had owned the property "for approximately a hundred years;" the property had always been used for farming; and was currently being farmed by Respondents, who had rented the property for a long period of time. He related he had never personally farmed the property but had helped his uncle farm the property when he was a child. Appellant also testified he had no desire to sell the property for money and that he wanted to carve off the other four-fifths for Respondents and keep a one-fifth portion of the northern highway frontage for himself. He related he did not want the portion of land upon which the small house sits, because he had

---

1. Mrs. Keen also reserved a life estate in the property for herself.

2. It appears that Mr. Campbell had been farming the property for thirty-three years prior to this transaction.

no use for it. He related by carving off the northern part of the land for him there would be no interruption to Respondents' farming operation and "all [t]he Court would have to do is just draw a boundary line."[3] His counsel announced at trial that Appellant desired the northernmost seven or eight acres of the property without the portion of land containing the house.

Mr. Campbell testified that he had been farming on the property as a renter for thirty-three years and that, other than the period of time from 1941–1945 when the military was using the southern portion of the property, it had always been used as farmland. He related "the north end is more productive than the south end," because the old runways on the south end left "a lot of asphalt and clay gravel" on the ground such that it is "pretty rocky." Mr. Campbell also testified the northern portion of the property, which is comprised of about 12 or 13 acres, produces "150, 200 pounds [of cotton] per acre more" than the southern portion of the property. He related there is a renter living in the house on the property and Mr. Campbell felt the house was valued at $10,000.00 to $12,000.00. Mr. Campbell also stated he disagreed with Appellant that a line could be drawn to partition the property. He related there was "no fair way" to divide the property because of its "odd shape;" the runways which crisscross the southern portion; and the higher productivity of the northern portion. Mr. Campbell also testified he farms six thousand acres and, as a person familiar with farming, it would be better to have a larger tract rather than a smaller tract as proposed by Appellant.

He stated he would be able to continue to farm the property if Appellant were awarded the northern portion, but "it would be more trouble . . . [he would] have to go around it, and [it would] be short of rows. . . ."

Prior to trial the trial court appointed a panel of three Commissioners to evaluate the property to determine an appropriate type of partition, if any. *See* §§ 528.200; 528.250; *see also* Rules 96.15 and 96.12.[4] The Commissioners found "that the said property cannot be conveniently or practicably partitioned in kind; therefore, it must be partitioned by sale."

At the close of all the evidence, the trial court found the property "cannot be partitioned in kind without prejudice to the owners, and therefore, should and must be partitioned through public sale. . . ." This appeal followed.

■ Appellant's sole point relied on states the trial court erred in ordering the property to be partitioned by sale because such a judgment was not supported by substantial evidence

> that partition in kind would result in great prejudice to the owners of the property in that there was only evidence that partition in kind would result in a minor inconvenience to [Respondents] in the farming of any portion of the land awarded to [Respondents] and that substantial evidence did exist upon which the court could rely in basing a division in kind of the property which would have resulted in no prejudice to any party.

3. Also entered into evidence at trial by Appellant was an appraisal of the property. The appraisal valued the majority of the farmland at $1,875.00 per acre or approximately $76,875.00. The portion of land bordering Highway E, consisting of 1.7 acres, was val-

ued at $7,820.00. The appraiser also valued the small home at $46,000.00.

4. All rule references are to Missouri Court Rules (2006) and all statutory references are to RSMo 2000.

■ We review partition actions pursuant to *Murphy v. Carron*, 536 S.W.2d 30 (Mo. banc 1976). "Thus, we will sustain the judgment of the trial court unless there is no substantial evidence to support it, it is against the weight of the evidence, or it erroneously declares or applies the law." *Clark v. Dady*, 131 S.W.3d 382, 386 (Mo.App.2004). "The power to set aside a trial court's judgment on the ground that it is against the weight of the evidence will be exercised with caution and only when the reviewing court has a firm belief that the decree or judgment is wrong." *Thomas*, 17 S.W.3d at 182. "A trial court is free to believe none, part, or all of a witness's testimony." *Id.* at 187. "A trial court may disbelieve testimony even when it is uncontradicted." *Id.* "A reviewing court's deference to a trial court's resolution of credibility is not limited to the issue of witness credibility, but also to conclusions of the trial court." *Id.*

■ "Partition is an *in rem* proceeding governed by Chapter 528 and Rule 96." *Clark*, 131 S.W.3d at 386 (internal citation omitted). "Section 528.030 and Rule 96.01 authorize joint tenants and tenants in common to bring an action in partition." *Id.* "In a partition action, the 'court shall determine the interests of the parties and order partition in kind or the sale of the land.'" *Id.* (quoting Rule 96.08). "The subject property of the partition action can be ordered sold and the proceeds distributed where partition in kind 'cannot be made without great prejudice to the owners.'" *Clark*, 131 S.W.3d at 386 (quoting § 528.340); *see* Rule 96.18. "Partition is a question of fact for the trial court; and the findings of the trial court are afforded great weight if there is substantial evidence to support them." *Von Behren v. Oberg*, 902 S.W.2d 338, 340 (Mo.App.1995).

■ "The test of whether partition in kind would result in great prejudice to the owners is whether or not the value of the share of each, after partition, would be materially less than the share of the money equivalent that each could probably obtain from the whole." *Id.* The foregoing, however, is tempered by the requirement that the evidence presented must be directed to

[t]he situation of the property and its physical characteristics, which necessarily control the question of whether it was practicable to divide the same between the parties according to their respective interests, giving each his or her share, quantity, and quality, relatively considered, *without materially lessening the money value of the several interests.*

*Gebauer v. Gebauer*, 165 S.W.2d 333, 335 (Mo.App.1942) (emphasis added).

Here, there is substantial and competent evidence in the record supporting the trial court's determination that partition in kind could not be made without great prejudice to the parties and that the real estate should be sold in partition rather than partitioned in kind. *See id.* In the present matter, Mr. Campbell, who has been a farmer his entire life and has farmed the property at issue for thirty-three years, testified there was "no fair way" to partition the property such that he was not prejudiced. He related this was due to the "odd shape" of the property; the fact that the northern portion of the property produces a significant amount of cotton more per acre than the southern portion; and the old runways located on the southern portion of the property create a lesser yield and other farming difficulties. Mr. Campbell testified that when it comes to farming it is always better to have a larger tract than a small, odd tract, and if the property was divided as proposed by Appellant it would be "more trouble" for him to farm. In like manner, the Commissioners appointed by the trial court agreed

that Respondents would suffer prejudice from an in kind partition.

On the other hand, Appellant, who acknowledged he was not a farmer and had not been on certain portions of the property in a number of years, testified that he did not feel there would be any interruption in Respondents' farming operation and that "all the Court would have to do is draw a boundary line" to partition the property in kind. However, viewing the evidence in the light most favorable to the trial court's judgment, *Thomas*, 17 S.W.3d at 182, the trial court evidently believed Mr. Campbell's assessment of the value of the small, rural home, and due to his years of experience of farming the land in question, believed he was discernibly more familiar with the entirety of the property than Appellant, a non-farmer who had little working knowledge of the property. We defer to the trial court's determination of witness credibility because it is in a superior position to evaluate the credibility of the witnesses before it. *Hale v. Hale*, 180 S.W.3d 85, 89 (Mo.App.2005).

The record supports the proposition that dividing in kind the northern seven or eight acres as Appellant's counsel suggests would result in Appellant obtaining the most productive portion of the property. It is difficult to see how such an in kind division would not materially lessen the money value of Mr. Campbell's interest.

*See Gebauer*, 165 S.W.2d at 335. Furthermore, based on the record, in order to effectuate a proportionate division designed *not* to lessen the money value of Mr. Campbell's interest would require a proportionate division of the most productive land into smaller tracts, making farming operations more cumbersome. "[W]e believe that the trial court would be justified in finding that such division would reduce the value of the share of each to an amount substantially less than could be realized by each from a sale of the whole." *Id.; see First Nat. Bank v. Eucalyptus*, 752 S.W.2d 456, 458 (Mo.App.1988).

The trial court's "conclusions are entitled to great weight in this Court, and we will defer to [its] finding unless there is no substantial evidence to support it." *Gebauer*, 165 S.W.2d at 335. There is substantial evidence supporting the trial court's judgment requiring the tract of land be sold at public sale. *Eucalyptus*, 752 S.W.2d at 459. Point denied.

The judgment of the trial court is affirmed.